296 So.2d 176

**Margaret Rose Jennings LAWSON**

v.

**Lois Donathan JENNINGS.**

**Civ. 327.**

Court of Civil Appeals of Alabama.

June 5, 1974.

Ruth S. Sullivan, Dadeville, for appellant.

Lee Sims, Dadeville, for appellee.

BRADLEY, Judge.

This is a child custody case.

The appeal comes from the Circuit Court of Tallapoosa County. The cause was commenced by the filing of a petition for modification of a final decree of divorce under which the appellee had been granted custody of her minor children. Appellant, the natural sister of the minor who is the subject of this appeal, was allowed to intervene on the side of her father. The trial court after a hearing ore tenus entered an order leaving the custody of the minor child, Beth, with the mother.

At issue before the court in this case was who was the proper person to have the care and custody of two minor children, Judy, age fifteen, and Beth, age eight. During the trial, the parties agreed that the custody of Judy should vest with the appellant-intervenor. At the conclusion of the hearing the custody of the youngest child was awarded to the appellee-mother. The appeal is from that aspect of the decree.

Throughout the trial the evidence was sharply disputed and is in direct conflict on several points. The testimony adduced by the appellant tended to show that the appellee worked from two p. m. to ten p. m. at Russell Mills in Dadeville, Alabama, and that she operated a small store. The testimony further showed that the home of the appellee was not well kept, that it was infested with roaches, and that appellee allowed the child, Beth, to stay until late into the night with a fifteen year old who neither cooked nor prepared food for the child. Further, the appellee was accused of having various men stay in the home overnight. It was said that she allowed her minor children to drink alcoholic beverages, and that she did not prepare meals for her children.

The older child, Judy, had been ordered to either leave the house or to marry a young man she had been dating. Judy left and went to North Carolina to live with the appellant. Following Judy's arrival in North Carolina, the appellant came to Alabama and, accompanied by her father, visited the younger child, Beth, at the school she was attending. After a discussion with Beth, the appellant took the child back to North Carolina. It was said that Beth expressed a desire to go to North Carolina with her sister as she was unhappy at home.

The appellee-mother allowed the children to remain in North Carolina for several months and then demanded that the children be returned to her. The appellant here petitioned the North Carolina courts to grant her custody of her two minor sisters, but the court ruled that it was without jurisdiction in the matter and that the mother had a right to the children. The deputy sheriff from North Carolina testified that when he went to the appellant's home to take the children that the youngest child ran and cried saying that she did not want to go with her mother. There was testimony that the mother at one point asked the officers to handcuff the children and offered to do it herself.

The appellee denied that she was an unfit mother. She also completely denied that the events in North Carolina had occurred as the deputy had testified. She claimed that her working was absolutely essential and that she provided meals for Beth and kept the house clean. There was also testimony that she had asked that the police in Camp Hill keep watch on the house while she was away at work. She denied that she had ever allowed a man to spend the night with her while

the children were at home and denied she had ever allowed the children to partake of alcoholic beverages while they were in the home and under age.

Both sides presented witnesses that testified to their respective good characters in the community and that their homes were the proper places for the children to be reared. The child, Beth, testified that she preferred to be with her mother and that she was happy at her mother's home. She also denied running, screaming, and saying that she did not want to return to her mother's home in Alabama.

The appellant presents to this court four assignments of error, and these assignments of error present essentially two issues: (1) that the trial court erred in considering evidence of a Department of Pensions and Security report on home conditions; and (2) that the decree is unsupported by the evidence. Under issue one, appellant argues in brief that the trial court had no right to consider a report by the Department of Pensions and Security, as there is nothing to indicate that this evidence was before the court.

The final decree in this cause reads as follows:

" . . . Testimony before the Court, including investigation by the Dept. of Pensions and Security, was to the effect that Lois Donathan Jennings was the proper person to have the care, custody and control of her daughter, . . . ."

On August 11, 1973, some sixteen days prior to the hearing, the trial court issued a written order to the Tallapoosa County Pensions and Security Department to make an investigation, " . . . of the home and the social surroundings of Lois Donathan Jennings' home." The investigation was made and a written report thereof filed with the court. Such report was considered by the trial court along with all the other evidence in deciding the custody of the minor child, Beth.

No objection was made by either party to the report being ordered, nor was any objection interposed to a consideration of the report by the trial court in arriving at its decision.

Counsel for both parties stated in oral argument before this court that they were aware of the court's order to the Department of Pensions and Security to prepare a report of the home and social surroundings of the appellee's home. Counsel for appellee stated that he was also aware that the report had been filed with the court and that he knew its contents. Counsel for appellant stated that she saw the report in the courtroom on the day of the trial but did not examine it or make any objection to its use by the court.

Appellant now contends that the trial court erred in considering the said report without giving the parties an opportunity to object to its use or to confront and cross-examine the makers of said report. In support of her objection, appellant cites us to the case of Williams v. Pope, 281 Ala. 416, 203 So.2d 271.

The *Williams* case involved the adoption of a minor child. Pursuant to statute, i. e., Title 27, Section 2, Code of Alabama 1940, as Recompiled 1958, the trial judge ordered the county Department of Pensions and Security to make a report of the homes of the parties to the adoption and stated in open court that he would base his decision in part on said report. Counsel for appellant objected to the use of the report and requested permission to examine the department employee who did the investigation. This request was denied by the court. The court stated that this was a confidential matter between the court and the department.

The Supreme Court stated that:
" . . . [A]ll the litigants in an adoption proceeding are entitled to know all the evidence that is considered by a court in arriving at a judicial determination. Concededly, some evidence in an adoption proceeding possibly

should not be made public, but the trial judge could recess a hearing to his chambers to hear such evidence, or if a part of the report should not be considered, it could be excluded. But the report and recommendations of the Department is admissible and is not a private matter of consultation between the trial court and agents of the Department. And, certainly, the agents of the Department are subject to cross-examination as to their recommendations."

In the case at bar, appellant was aware that the trial court had ordered the county Pensions and Security Department to make a report to it of the home surroundings of appellee, and appellant also saw the report in court on the day of trial but made no objection thereto nor requested to examine the report or the maker of the report.

In Dorough v. Colvard, 284 Ala. 462, 225 So.2d 866, the Supreme Court had before it a case where the trial court had ordered a report be made of the homes of the parents who were seeking custody of two minor children. Reports had been made to the court and these reports had apparently entered into the decision of the court. The Supreme Court said:

" . . . Counsel for appellant did not voice any objection when the trial court announced that he was going to have 'a home investigation made on both these people' and that he would 'wait' until he got 'the two probation reports back in.' Nor did counsel for appellant undertake to prevent the trial court from considering those reports before final decree was rendered.

"We hold there is no merit in appellant's Assignment of Error No. 3."

█ In the instant case, as pointed out above, no objection was made to the order for the report, nor was objection made to the use of the report by the trial court in its decision. And, neither did appellant request an opportunity to examine the maker of the report. Under these circumstances we consider that appellant waived any objection it might have had to the report or the use of it by the court. Appellant also says that she did not know that the trial court was going to rely on the report in making its decision; otherwise she would have objected to it. The Supreme Court said in Dorough:

"While the record does not affirmatively show that Mrs. Ingram's report was considered, it is only reasonable to assume that it was considered by the trial court before the decree here under review was rendered. . . . "

In the case at bar, notwithstanding that the trial court's decree does reflect that it did consider the Pensions and Security report; it appears reasonable to assume that the court intended to consider the report in arriving at its decision; otherwise the order for a report to be made would seem to be a useless gesture.

We do not find any error in issue one.

Issue number two questions the sufficiency of the evidence to support the decree awarding the custody of the minor child, Beth, to appellee.

█ This cause was commenced in the trial court as a result of the filing of a petition to modify a child custody decree. In such a proceeding, the burden is on the movant to show sufficient changed conditions since the decree sought to be modified as would authorize a different custody arrangement. McGee v. McGee, 284 Ala. 320, 224 So.2d 672. The trial judge, in the instant case, after considering all the evidence, apparently concluded that there was not sufficient changed circumstances to warrant a modification of the custody arrangements for the minor child, Beth.

█ The evidence considered by the trial court consisted of oral testimony, depositions, and the report of the county Pensions and Security Department. The

rule is that where the trial court hears a child custody case orally, its findings will not be disturbed on appeal unless plainly or palpably wrong. Long v. O'Mary, 270 Ala. 99, 116 So.2d 563. The rule has also been applied in those custody cases where some of the evidence was not taken ore tenus. Carter v. Harbin, 279 Ala. 237, 184 So.2d 145.

After a careful examination of the evidence in the instant case, we cannot say that the trial court's decision is plainly or palpably wrong; consequently, we believe the trial court's judgment leaving the custody of the minor child, Beth, with the mother should be affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.