This is a case involving custody of children. The Circuit Court of Mobile County found two children, ages 5 and 3, to be dependent children within the meaning of Chapter 7 of Tit. 13 of the Code of Alabama 1940. The trial court awarded permanent custody and the legal guardianship of the children to the Department of Pensions and Security. Additionally, in the trial court's order, it was stated that the rights of the natural parents, as they relate to the children, were permanently terminated.
From this decree the natural mother appeals and presents four issues: (1) Does the evidence support the trial court's action in awarding custody of the children to the Department of Pensions and Security? (2) Does a circuit court have, in a proceeding involving neglected or dependent children, the power to terminate parental custody rights? (3) Are Alabama statutes as they relate to dependent and neglected children and, as applied in this instance, unconstitutional? (4) Did the trial court err to reversal in refusing to allow certain testimony to be received in evidence?
The issues and facts as they are applicable to such issues will be discussed in the order as set out hereinabove.
 I
Viewing the testimony with the attendant presumptions, we find the following:
The children involved were at the time of the trial below ages 5 and 3. Each had a different father to whom the mother was never married. The mother has a third child, age 5 months, who is not involved in this appeal. We note that the mother has never been married to this child's father either.
Since 1974, approximately two years prior to the hearing in question, the Mobile County Department of Pensions and Security had been working with the mother in an attempt to bring about a stable home for the children. Some time prior to January of 1975, the children were taken by the court from the mother. However, in January of 1975, the children were returned to the mother. At the time of the return of the children to the mother, the court apparently informed the mother that she was to establish a stable home and to keep in contact with the Department of Pensions and Security.
During the period from January of 1975 to July 1975, the mother lived in four different places. Sometimes the mother stayed with the children and sometimes the children were with friends or relatives of the mother. Additionally, during this period, the mother had various jobs, including baby-sitter, domestic, and waitress in a "Club." It was during the time she was employed as a waitress that she became pregnant with the third child.
There is further testimony that in addition to the four places of residence mentioned above, approximately two weeks prior to the hearing, the mother had moved into a fifth residence. This residence was rent-free, without lease, and had no utilities.
In addition to the above, the mother testified that in June 1976, she would be unemployed.
There was testimony by employees of the Department that they (the Department) had great difficulty keeping "track" of the mother and that she did not cooperate with them.
Initially, we note the oft stated rule that decrees of the trial court in child custody cases, rendered after hearing witnesses ore tenus, will be given every favorable presumption and will not be disturbed unless palpably wrong. Ayers v.Kelly, *Page 36 284 Ala. 321, 224 So.2d 673; Lawson v. Jennings, 52 Ala. App. 582,296 So.2d 176; 12 Ala. Digest Infants 19.3 (7).
The controlling consideration in child custody matters is the best interest of the child. See 12 Ala. Digest Infants 19.2 (2) and cases cited thereunder. It thus follows that while the parent has a prima facie right to the custody of a child, this right is not absolute and must yield to the superior criterion of the child's welfare.
Viewing the evidence as set out hereinabove and with the above principles in mind, this court can hardly find that the trial court was palpably wrong in finding that the best interest of the children was served by their permanent custody being placed with the Department of Pensions and Security.
For cases where, to this court, even less evidence than is presented here has been held sufficient to sustain a decree of the trial court awarding custody of a minor to the Department of Pensions and Security, see Long v. O'Mary, 270 Ala. 99,116 So.2d 563; Harrell v. Long, 49 Ala. App. 322, 272 So.2d 248.
 II
Able counsel for the mother, through an excellent brief, contends that Chapter 7 of Tit. 13 and Tit. 13, § 351, Code of Alabama 1940, do not permit the trial court to terminate permanent custody rights.
Chapter 7 of Tit. 13 provides in pertinent part as follows:
 "The juvenile court shall have the power [as regards a dependent, neglected or juvenile child under its jurisdiction] . . to make and enter such judgment and orders for his custody, discipline, supervision, care, protection and guardianship, as, in the judgment of the court will properly conserve and protect the welfare and best interests of such child."
Title 13, § 361, Code of Alabama, provides in pertinent part as follows:
 "The court may commit to the state department of public welfare by either temporary or final order such children as the state department of public welfare is equipped to care for and agrees to receive. . . . The court may make such other order or judgment as the court, in its discretion, shall deem to be for the best interests of the child."
To this court, the mother's position regarding this issue is best stated in her brief and is as follows:
 "The statutory authority to award permanent custody is not tantamount to cutting off custody rights, because even if permanent custody is awarded, the court has continuing jurisdiction to redetermine the issue of custody upon a showing of changed circumstances. . . .
 "An order terminating a parent's custody rights is an order which, in effect, cuts off the trial court's jurisdiction to redetermine the question of custody insofar as it involved the parent's right to regain custody. Thus, the court's authority to grant permanent custody does not include the authority to terminate custody rights of any party."
The court does not agree with appellant. To us, the language of the appropriate statutes is clear that the natural parent's right to custody may, in effect, be permanently terminated.
A fundamental rule of statutory construction is to ascertain and effectuate the intent of the legislature as expressed in the statute. State ex rel. City of Birmingham v. City ofTarrant City, 294 Ala. 304, 315 So.2d 583.
Here, it is clear that the legislature intended that if the best interest of the child required that the child be placed with the Department of Pensions and Security, then the court could make such orders as necessary to effectuate that placement including terminating parental custody rights.
The effect of the Alabama cases clearly shows that the above was intended. In Gandy v. State, 250 Ala. 543, 35 So.2d 161, the Jefferson County Juvenile and Domestic Relations Court, pursuant to Tit. 62, *Page 37 
§ 317, Code of Alabama, awarded custody of three minor children to the State Department of Public Welfare for permanent placement in a foster home. Tit. 62, § 317, is applicable only to Jefferson County, whereas Tit. 13, § 351 et seq., has statewide application. However, for our purposes herein, that is the only significant difference between the two statutes. The mother of the children argued that the court was without authority to effect the permanent placement in a foster home. Thus, her argument was analogous to that of Miss Smith herein. In essence, the mother challenged the court's authority to permanently terminate her rights to custody of her children. The Supreme Court of Alabama stated:
 "That the Juvenile and Domestic Relations Court of Jefferson County and the Circuit Court, in Equity, on appeal, has such authority is beyond question." (Gandy, supra, 250 Ala. at 544, 35 So.2d at 162).
Accord, Anonymous v. State, 272 Ala. 172, 129 So.2d 684. See also Harrell v. Long, supra.
It is true that the language of the statute does not expressly state that the court may "permanently terminate" the custody rights of the parents, but any other reading of the statute would indeed be strained. How, one asks, could a child ever be permanently placed by the Department if the custody rights of the natural parents could not be lawfully terminated? The natural reading of the statute, bolstered by the holding ofGandy, supra, convinces us that the legislature intended that the courts have the power to take that action which Miss Smith herein contests.
 III
The mother next contends that the above quoted statutes are unconstitutional, apparently because they violate the Due Process Clause of the 14th Amendment. Counsel argues thatWambles v. Conn (M.D.Ala. 1976) 417 F. Supp. 769, is supportive of his position.
We have carefully perused the record in this case. This constitutional question is raised for the first time on this appeal.
It has long been the law in this state that constitutional questions not raised in the court below will not be considered for the first time on appeal. Gamble v. Gamble, 53 Ala. App. 168, 298 So.2d 254; 2 Ala. Digest Appeal and Error 170 (2). Appellant's contention thus cannot be treated by this court.
However, we note that to this court Wambles, supra, addressed itself only to "neglected" children and does not touch upon what we have in this instance, to wit, "dependent" children. Moreover, even if Wambles is construed to apply to dependent children, this court is not bound by the decision rendered therein. Minniefield v. State, 47 Ala. App. 699, 260 So.2d 607; 5 Ala. Digest Courts 97 (1).
 IV
Miss Smith next argues that the sustaining of objections to the following questions, posed to Mrs. Windle of the Department of Pensions and Security, was reversible error:
 "A The Department of Pensions and Security has accepted permanent custody of the children and they will make a home for them.
 "Q Has the State Department told you what those plans will be?
. . . . .
 "[W]hat is the usual practice in a case such as this as regards to disposition of the children, the ones who are given to the Department of Pensions and Security?
. . . . .
 "What are the chances of finding a permanent place for a three and a half year old female black child and a five year old black child, male black child?"
Miss Smith properly states that the best interest of the children is the controlling criterion in determining to whom custody of the children will be awarded. She maintains that the trial court, by limiting her *Page 38 
inquiry into the state's general plans for her children, could not properly make a decision concerning this matter. Put another way, she contends that the court, in sustaining the state's objections to the questions posed by her counsel on cross examination, precluded a showing that the best interests of the children would be served by remaining in her custody.
In Moon v. Nolen, 294 Ala. 454, 459, 318 So.2d 690, 694, the Alabama Supreme Court said:
 "The scope and extent of cross-examination is a matter reserved for the sound discretion of the trial court. The exercise of discretion in the limitation of cross-examination is not reviewable in the absence of gross abuse. . . . Moreover, prejudicial error must be shown. . . ." [Emphasis supplied]
In this instance, due to the general nature of the questions, we cannot say the trial court erred to reversal in sustaining the state's objections. We note that Miss Smith cites no cases wherein similar action by the trial court was deemed to be reversible error. See also ARCP 61.
We should not be understood as holding that the trial court can never commit reversible error in failing to allow cross examination of a general nature concerning the present status of children under circumstances similar to those herein, to wit, a Tit. 13, Chapter 7, proceeding. Rather, we limit our holding to the facts of this particular case. Denial of the right to receive answers to the posed questions does not, in this instance, warrant reversal.
All issues having been duly considered, the case is due to be and is ordered affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.