This is a child custody case.
Terrisa Diane Turner Syphrit (Syphrit) and Odie Turner (Turner) were divorced on August 29, 1980. By agreement the wife was awarded custody of the parties' minor child, Kelley Nichole. The husband was required to pay child support of $25 per week and was given reasonable visitation privileges.
On April 12, 1982 the father filed a petition to modify the decree requesting custody of his daughter due to a material change in circumstances since the divorce. Syphrit's parents, Frank and Martha Baggett, as intervenors in the suit, asked that they be awarded custody.
Both the mother and the maternal grandparents appeal from an order of the Clarke County Circuit Court which, among other things, modified the original decree of divorce and awarded custody of the minor child to her father.
It is argued here that the trial court erred in considering two reports furnished by the Clarke County Department of Pensions and Security, in modifying the decree and awarding custody of the child to her father, and in denying any custodial right to the mother and maternal grandparents.
Syphrit takes the position that it was clearly improper for the court to consider the DPS reports it referred to in its order, inasmuch as the reports were not introduced into evidence and made a part of the record on appeal.
The trial court's final decree provides as follows:
 "[T]estimony having been heard and evidence having been presented, and the Court having considered the same, including reports furnished the Court by the Department of Pensions and Security of Clarke County, Alabama, dated the 24th day of January 1983, and the 22nd day of February 1983. . . ." (Emphasis added.)
By written order dated December 20, 1982, the court directed the Clarke County Department of Pensions and Security to make an investigation of the parties' homes and to report its findings in writing to the court on or before January 24, 1983. Apparently two such reports were made: one on January 24, 1983, the other on February 22, 1983. As evidenced by its final decree, these reports were considered by the trial court along with all the other evidence in deciding the custody of the minor child, Kelley. *Page 628 
Syphrit now contends that it was wrong for the court to consider the reports without first giving her the opportunity to examine the reports or question the person(s) who prepared the reports.
In child disposition hearings the court may receive oral and written reports and rely on them to the extent of their probative value. Murphy v. Quinn, 402 So.2d 1033 (Ala.Civ.App. 1981). However, all parties to such a proceeding are entitled to know all the evidence that is considered by the trial court, and to cross-examine agents of DPS as to their recommendations.Lawson v. Jennings, 52 Ala. App. 582, 296 So.2d 176
(Ala.Civ.App. 1974).
In the case at bar the court informed the parties and their attorneys, in writing, that it had requested DPS to investigate the homes of the parties and report back to it no later than January 24, 1983. Thus, the parties were fully aware of the trial court's request for reports from DPS and that the court would consider such reports in making its decision. The parties made no objection to the court's request for DPS reports, nor did they make any effort to prevent the trial court from considering such reports in making its final decision. Under these circumstances we consider that appellants have waived any objections they might have had to the DPS reports being considered by the trial court. Lawson v. Jennings, supra;Dorough v. Colvard, 284 Ala. 462, 225 So.2d 866 (1969).
The final issue is whether the evidence discloses a material change of circumstances affecting the welfare of the child which supports a change of custody from the mother to the father.
The evidence submitted to the trial court in support of the father's petition for modification revealed that Syphrit and Turner were divorced soon after the minor child, Kelley, was born. Syphrit was barely sixteen years old at the time she was awarded custody. After the divorce she took the child to live with her at her parents' house. Between August 1980 and January 1982, the Baggetts supported Syphrit and Kelley and helped in the rearing of their grandchild.
In January 1982 Syphrit moved in with her boyfriend, Charles Syphrit, in his mother's home in Jackson, Alabama. She left the child with the Baggetts. One week later Syphrit returned for Kelley and took her to Jackson with her where Kelley remained for three or four months. During this time Syphrit found she was pregnant by her boyfriend, and agreed to let the Baggetts have custody of Kelley. Syphrit testified that she now wished to withdraw that consent and retain custody of the child. Apparently on the advice of her attorney, Syphrit returned the child to the Baggett home when she was served with her ex-husband's petition.
Syphrit married Charles Syphrit on August 2, 1982 and the couple have a daughter, born August 25, 1982. Subsequently, she had marital difficulties with her husband, moved out, and went to Troy, Alabama for about a week. The couple has since reconciled and they currently enjoy a good marital relationship.
Syphrit is now eighteen years old and her husband is seventeen years old. They reside in a two-story brick home which is fully paid for. Charles Syphrit is a stock-boy at Piggly-Wiggly and earns about $150 a week. Syphrit does not work and is a full-time mother. The evidence shows she loves Kelley very much and wants Kelley to be able to grow up with her half sister in Jackson.
The hearing on this matter also revealed that Kelley is now three years of age and has lived with her grandparents, the Baggetts, since she was a few months old. The Baggetts have raised her, provided for her, and loved her, and the only assistance they received from anyone was $25 per week support paid by Turner. They have two other children, ages sixteen and twelve, who live with them in their house trailer. Both Mr. and Mrs. Baggett work full time and leave the child with a sitter while they are working. It is without dispute that on occasion the Baggetts have used profanity in Kelley's presence and *Page 629 
have refused to allow Turner to visit with the child.
Turner, the child's father and appellee here, is twenty-four years old. He is married to Donna Turner and the couple lives in a mobile home in Fulton, Alabama. They do not have any children of their own. Donna has known Kelley since April 1982, when Turner started getting weekend visitation rights pursuant to a temporary court order. Donna is willing to treat Kelley as she would her own daughter and will care for her and love her. Kelley and Donna appear to have a very good relationship. There was testimony given at trial that Turner is a suitable person to have custody.
Both Turners work full time. Turner is employed at MacMillan-Bloedel in Pine Hill, Alabama and has been for over six years. He works 7:00 a.m. to 3:30 p.m. some weeks and 4:30 p.m. to 1:00 a.m. other weeks. Mrs. Turner works at TGY in Thomasville, Alabama and works 8:00 to 4:00 some days, 9:00 to 5:00 some days, and 12:00 to 8:00 some days. The Turners have arranged to have Lois Roberts, Donna's mother, take care of Kelley while they are working. Sometimes it is 8:30 or 9:00 p.m. before one of them can pick up the child after work.
The evidence shows that Turner has shown a sincere concern for his daughter's welfare. He has always paid the $25 support obligation required of him under the decree, maintains hospital insurance on the child, and has designated her the beneficiary of a life insurance policy. According to Turner, he has always tried to exercise his visitation rights.
The father, as the party seeking to modify a prior award of custody, bears the burden of showing a material change in circumstances which affects the best interests and welfare of the child. If he can satisfy this burden, modification of the prior custody award is warranted. Munchus v. Munchus,412 So.2d 794 (Ala.Civ.App. 1982).
Summarizing the evidence relating to the mother's conduct as it affects her child, we find that the mother moved out of her parents' home and moved in with her boyfriend, carried Kelley with her, lived in these conditions for several months, and became pregnant by her boyfriend. After learning of her pregnancy, and apparently after being served with her ex-husband's petition for custody of Kelley, Syphrit carried Kelley back to her parents to live.
The evidence relating to the father shows that he is a hard worker, is married, has paid his child support regularly, has visited Kelley when permitted, wants Kelley's custody, and is a fit parent.
Based on this evidence we cannot say that the trial court's judgment awarding Kelley's custody to her father is clearly wrong and unjust. Sheffield v. Sheffield, 350 So.2d 1056
(Ala.Civ.App. 1977).
In brief here the grandparents argue that the court should have awarded Kelley's custody to them rather than to the father. They say they should have custody of Kelley because Kelley has been with them most of her short life and they want her to continue to live with them.
There is a presumption that where there are conflicting claims to custody between a parent and a nonparent, the parent has the primary right to custody. Pendergrass v. Watkins,383 So.2d 851 (Ala.Civ.App. 1980). The party seeking to overcome such presumption has the burden of convincing the trial court that the best interests of the child will be served by placing custody with that party. Willette v. Bannister, 351 So.2d 605
(Ala.Civ.App. 1977).
The trial court found that the father was the more suitable custodian for the child. By so doing the trial court, in effect, held that the Baggetts had failed to overcome the parental presumption accorded to the father. The Baggetts contend such a finding is unsupported by the evidence. We disagree.
As noted above the father is a fit parent to have custody of Kelley and the trial *Page 630 
court found that Kelley's best interests and welfare would be served by her custody being placed with the father. We do not find such judgment to be wrong or unjust, nor is it unsupported by the evidence.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.