EDWARD N. SCRUGGS, Retired Circuit Judge.
This is a paternity case. The defendant was adjudged to be the father of the child in question and he has appealed.
The child was born on September 18, 1978 and the paternity action was instituted on April 4, 1983. The trial court overruled the defendant's contention that the action was barred by the statute of limitations of two years. That ruling was correct since the five-year statute applies and did not bar this paternity action. Morgan County Department of Pensions & Security v. Kelso, 460 So.2d 1333 (Ala.Civ.App.1984); State v. Burks, 454 So.2d 1038 (Ala.Civ.App.1984).
Pursuant to rule 35(a) of the Alabama Rules of Civil Procedure, the trial court, on motion of the State, ordered the defendant, the mother of the child, and the child to submit to the drawing of blood samples for paternity evaluation testing. Those samples were taken and laboratory tests were performed.
At the jury trial the mother and the defendant both testified as to the ordinary and customary matters which usually are presented by such parties in paternity actions. The chain of possession of the blood samples was established and a Dr. Geyer testified at length, his testimony occupying sixty-nine legal sized pages of the record.
Dr. Geyer has a Bachelor of Arts degree in biology and chemistry, a master’s degree in biochemistry, and a doctorate in immunology and microbiology. He is a member of a number of professional associations or societies. He has performed approximately 45,000 paternity evaluations and follows scientifically accepted and approved procedures in doing so.
One of the tests which he ran upon the three samples in this case was the human leukocyte antigen test (HLA), which is a test upon tissue. The leukocytes upon which the test is run may be obtained from blood, the spleen, lymph nodes, the heart, or a kidney. HLA is generally accepted in the scientific community as a valid paternity evaluation test. In this case, the results of the HLA test alone indicate that the rarity of the blood groups was such that the defendant is thirty-three times more likely than not to be the child’s father. In using the results of the HLA test alone, the probability that the defendant was the father of the child is 97.07%, based upon the rarity of the blood groups.
*567 Dr. Geyer also performed electrophoretic procedures upon proteins and enzymes, which are inherited from both parents and which can be identified accurately in the laboratory and can be used to exclude a particular man from being the father of a certain child. Those proteins or enzymes used in the test may be obtained from blood or from virtually any cell of the body. That test is likewise accepted in the scientific community as a paternity determinant.
When he combined the rarity of the HLA types with his findings in the electrophoretic test, Dr. Geyer determined that the statistical probability was 99.95% that the defendant is the father of the child, the odds of his being the child’s father being 1,833 to 1 among male Caucasian North Americans.
The jury determined that the defendant was the father of the child and judgments to that effect and for the support of the child by the defendant were entered by the trial court.
We find no error in the order of the trial court that the mother, child, and defendant submit to the testing under rule 35(a), A.R.Civ.P. That rule is the foundation for the authorization of HLA testing of the husband, wife, and a child in proper instances in divorce cases and it is appropriate to order blood grouping as an evi-dentiary aid or tool, the results thereof to be considered by the trial court, along with all of the other evidence, in determining whether a husband is the father of a child born to the wife in an appropriate divorce action. Brislawn v. Brislawn, 443 So.2d 34 (Ala.Civ.App.1983); Balfour v. Balfour, 413 So.2d 1167 (Ala.Civ.App.1982). At the time of the trial the procedures which are appropriate to civil proceedings governed paternity cases. § 26-12-2, Code 1975. Accordingly, rule 35(a) applied to this paternity case.
The defendant, however, states that the blood tests can be performed only by a physician under that civil rule. As long as no physical or mental examination is involved and only laboratory tests are the subject matter of the rule 35(a) motion and order, we do not believe that the Supreme Court of Alabama by its adoption of that civil rule had any intention to require that the drawing of blood samples and such laboratory testing could be performed only by a physician. The rule states that the order shall specify “the person or persons by whom it is to be made.” As long as a qualified person performs such laboratory tests, the requirements of rule 35(a) are met in that regard.
Additionally, we find no objection being raised to a nonphysician having been ordered to conduct the testing until the evidence of Dr. Geyer was being presented at the trial. Any objection made at that time could have properly been considered by the trial court to have been presented too late.
Dr. Geyer was highly qualified from education, skill, knowledge, training, and experience, and the trial court did not err in permitting him to give expert testimony. C. Gamble, McElroy’s Alabama Evidence § 127.01(5) (3d ed. 1977). The proper predicate was laid. He testified and was cross-examined at length as to the reliability of the tests, what they consisted of, how they were conducted, the results reached, and statistical probabilities.
Able counsel for the defendant further argues that, at the time of the trial in March 1984, section 26-12-5, Code 1975, restricted the introduction of blood test results only to those instances where paternity is excluded by the tests. Where a statute has as its purpose the exclusion of evidence of testimonial value, the courts give it a rather rigid interpretation. In a doubtful case, a court is inclined to interpret such a statute so that evidence will be admitted rather than rejected. C. Sands, 3 Statutes and Statutory Construction § 67.07 (4th ed. 1974). Since the tests here utilized could be, and were, described as being tissue tests, we construe those tests to be outside the ambit of that code section. That is the same conclusion which was reached by the learned trial court. The *568 fact that the examined tissue or cells came from blood rather than from other parts of the human body such as the heart or liver does not alter the fact that tissue was being examined and not blood per se.
Section 26-12-5 was repealed by the Alabama Uniform Parentage Act, which is now codified as section 26-17-1 to -21 of the Code of Alabama. The latter act became effective on May 7, 1984, after the trial in this case. The Alabama Uniform Parentage Act provides that any blood tests shall be made by an expert qualified as an examiner of blood types, who shall be approved by the trial court. The results of the blood tests may be admitted into evidence by the defendant. “The blood test results may be admitted into evidence by the state only if the statistical probability of the alleged father’s paternity is available. Blood testing methods include, but are not limited to, the human leukocyte antigen test.” § 26-17-12(b), Code 1975. Accordingly, even if we held that, when the trial was held, the trial court erred in allowing Dr. Geyer to testify because of section 26-12-5, that code section has been repealed and his testimony would now be admissible under section 26-27-12. Since the case has already been tried with the testimony of Dr. Geyer, we see no reason for another trial. In short, even if there was initial error in that regard, which we have ascertained did not occur, it was error without injury under rule 45 of the Alabama Rules of Appellate Procedure in view of the present applicability of the Alabama Uniform Parentage Act and the repeal of section 26-12-5. We find no substantial injury to the defendant.
There was no error in the allowance of evidence that the statistical probability was 99.95% that the defendant was the father of the child. The proper predicate was laid for its introduction. “If blood group testings are performed, after proper predicate has been laid on the trial of the issue, evidence of the results of such tests and of the medical or scientific meaning and effect of the results of the tests is admissible ...” to aid the trier of facts in determining whether a particular man is the natural father of a certain child. Balfour, supra, 413 So.2d at 1169.
The judgments of the trial court are affirmed.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of section 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.