This is a paternity and child custody case.
This is the second time this case has been appealed to this court. In the first appeal, we held that the circuit court had jurisdiction to entertain an action by a putative father to determine the paternity of an illegitimate child under §38-10-7, Code of Alabama 1975. Eddy v. Lyle, 455 So.2d 877
(Ala.Civ.App. 1984). Only a brief recitation of the facts is necessary.
Tommy Eddy alleged that he is the father of Christy Lee Lyle, a minor child. Christy was born to Jean E. Lyle on February 24, 1980. Ms. Lyle was not married at the time. In his complaint, Mr. Eddy asked that he be determined to be Christy's father and be awarded either custody or visitation rights. At the time this action was commenced, Christy was in the legal custody of her maternal grandmother, Mary J. Lyle.
Prior to conducting bifurcated ore tenus hearings on the paternity and custody issues, the trial court ordered that Tommy Eddy, Jean Lyle, and Christy each submit to a human leukocyte antigen (HLA) test. At the paternity hearing, the results of the HLA tests were admitted into evidence over the objection of counsel for the Lyles. The experts who administered the tests were not present in court, nor was any predicate laid for introduction of the results. Those tests allegedly showed that Tommy Eddy had a 99.31 percent probability of being Christy's father. The trial court determined that Tommy Eddy was Christy's father and proceeded to determine proper custody of the child. After the second ore tenus hearing, primary custody of Christy was awarded to Tommy Eddy. A final decree was entered on April 3, 1985. The Lyles moved to alter, amend or vacate the judgment. The motion was denied. On appeal, the Lyles raise a number of arguments for reversal.
The Lyles first argue that since this action was commenced prior to the effective date of the Alabama Uniform Parentage Act (AUPA), § 26-17-1 to -21, Code of Alabama 1975, the trial court committed reversible error by admitting into evidence the HLA test results. They argue that prior to the effective date of that act, HLA test results were inadmissible under Alabama law. That question has recently been decided to the contrary by this court in Blackwell v. State, 475 So.2d 565 (Ala.Civ.App. 1985). See also Balfour v. Balfour, 413 So.2d 1167
(Ala.Civ.App. 1982). HLA test results were admissible evidence in a paternity action even before passage of the AUPA.
The Lyles' second argument is that the trial court erred when it allowed the HLA test results to be admitted into evidence without requiring that any predicate be laid. Counsel for Tommy Eddy argues that this did not constitute error because the AUPA does not require the laying of any foundation at trial before the HLA test results become admissible.
Section 26-17-12 (b) expressly provides for the admission into evidence of HLA test results in certain specific instances. While we recognize that the statute does not set forth any foundational requirements for admissibility, except that the test must be made by a person approved as "qualified" by the court, we do not believe that the legislature intended that no other foundational requirements be applied.
We consider that certain minimal foundational requirements are necessary to insure the reliability and relevancy of the test results. We hold that the party offering the HLA test results must show that the blood tested was in fact that of the *Page 397 
alleged father, the mother, and the child, and that the test results were based on reliable blood samples. See Blackwell v.State, 475 So.2d 565 (Ala.Civ.App. 1985) (where this court noted that "The proper predicate was laid."); Balfour v.Balfour, supra (where this court noted the admissibility of HLA test results "after proper predicate has been laid"). See alsoWillerick v. Hanshalli, 136 Mich. App. 484, 356 N.W.2d 36
(1984).
This minimal foundation includes the establishment of a chain of identification from the time the blood samples are taken to the time the samples are analyzed. See Nordan v. State,143 Ala. 13, 39 So. 406 (1905); Annot., 21 A.L.R.2d 1216 (1952). Such testimony, of course, should be based upon the first-hand knowledge of the witness. See C. Gamble, McElroy's AlabamaEvidence, § 105.01 (1977).
In passing, we note that we do not deem it necessary to decide whether the HLA test results were admitted under §26-17-12 (b), Code 1975, or under the common law. The same minimal foundation should be required under either authority.
The Lyles next argue that the trial judge committed reversible error when it apparently took judicial notice, during trial of the custody issue, of the entire juvenile court file concerning the home and family of Mary J. Lyle. This file was part of records then located in the Juvenile Court of Morgan County.
It appears that an order of the juvenile court was offered into evidence by counsel for Mr. Eddy. When this occurred, the trial judge volunteered that the entire file would be helpful and admitted it over the objection of counsel for the Lyles. Apparently, the trial judge had earlier become familiar with the child's family history as a result of his having been, at one time, a judge in the juvenile court. At no time was the entire file offered into evidence by a party to the proceedings.
While a judge may take judicial notice of his own court's records, Boone v. Director of Department of Public Safety,337 So.2d 6 (Ala.Civ.App. 1976), there is no authority allowing a judge to judicially notice the record of proceedings from a prior court. In fact, the law is quite clearly to the contrary. One of the better statements of the law on this issue is found in C. Gamble, McElroy's Alabama Evidence § 484.02 (2) (3rd ed. 1977), where it is stated:
 "The circuit court takes judicial notice of all parts of its record of the case in hand. For a proper purpose, the circuit court takes judicial notice of its own record in another case if, but only if, the pleadings in the case in hand refer to the record in the other case. However, the circuit court cannot take judicial notice of its record in another case for the purpose of supplying evidence in the case at hand, as the record in the other case must be introduced in evidence if it is to be considered as evidence.
 "No court takes judicial notice of the records of another court." (Citations omitted. Emphasis ours.)
See also Crossland v. First National Bank, 233 Ala. 432,172 So. 255 (1937) (circuit court cannot take judicial notice of the record of the supreme court or probate court).
It is clear that the trial judge abused his discretion when he took judicial notice of the entire juvenile court record. Counsel for Mr. Eddy submits that such can constitute no more than harmless error. We cannot find such error to be harmless.
It appears unreasonable to assume that the trial judge, having been the actual proponent of the record in question, would so strongly desire the record to be in evidence and yet not consider it when making a decision as to the custody of the child. It would have been a useless gesture. See Lawson v.Jennings, 52 Ala. App. 582, 296 So.2d 176 (1974).
Eddy also argues that the Lyles, after objecting to admission of the juvenile court record, later withdrew such objection. We *Page 398 
do not find such a withdrawal or waiver in the record.
The Lyles make another contention of error which we must address. Specifically, the trial court also committed reversible error when it admitted Department of Pensions and Security reports concerning the child, without allowing the Lyles an opportunity to cross-examine the author of such reports.
We have held that in child disposition hearings the court may receive oral and written reports and rely on them to the extent of their probative value. Syphrit v. Turner, 446 So.2d 626
(Ala.Civ.App. 1983). However, all parties to such a proceeding are entitled to cross-examine agents of DPS as to their recommendations and source of information. Id. See Lawson v.Jennings, supra.
Eddy argues that cross-examination need be allowed only as to "recommendations" made by the DPS agents. This is too narrow a reading of the pertinent case law. We have consistently held, in analogous situations, that the author of such reports must be available for cross-examination. See, e.g., Hamilton v.State, 410 So.2d 64 (Ala.Civ.App. 1982) (parental rights termination case); Kelley v. State Department of Pensions andSecurity, 366 So.2d 736 (Ala.Civ.App. 1979) (parental rights termination case). See also Worley v. Jinks, 361 So.2d 1082
(Ala.Civ.App. 1978); § 12-15-65 (f), Code of Alabama 1975.
In this case, the authors of the various reports were not present for cross-examination. Neither was there any in-court testimony to corroborate the information in the reports. SeeWorley v. Jinks, supra. The reports were therefore not competent evidence.
For the errors cited, we reverse and remand.
REVERSED AND REMANDED.
BRADLEY and HOLMES, JJ., concur.