CRAWLEY, Judge.
C.D. is the daughter of G.D. In 1994, when C.D. was three years old, her mother died of cancer. Less than a year later, G.D. remarried. In May 1995, two petitions alleging the dependency of C.D. were filed in the Bibb Juvenile Court: one by C.D.’s maternal grandparents — G.C. and E.C., and one by the Bibb County Department of Human Resources (DHR).
When the petitions were filed, C.D. was in the burn unit of Children’s Hospital in Birmingham being treated for second- and third-degree burns from scalding water, injuries allegedly inflicted by her stepmother. On May 15, 1995, the Bibb Juvenile Court issued a preadjudication removal order placing C.D. in DHR’s custody. Following a 72-hour hearing, the trial court ordered that temporary custody be awarded to DHR, with placement in a “nonrelated” foster home.
In April 1996, after C.D. had been in foster care for 10 months, the juvenile court held a status hearing. Between April and December 1996, DHR filed several reports with the court and the court held several more status hearings, each time continuing the child in DHR’s custody with placement in foster care.
Despite her claim that she had accidentally spilled hot water on C.D., the stepmother was arrested and was indicted for child abuse. The father supported the stepmoth *1093 er’s version of the scalding incident and maintained that his wife was innocent until October 7,1996. On that date, the stepmother was convicted of assault in the third degree. Later, the father was convicted of a separate criminal offense (tampering with a witness), for his attempt to influence C.D.’s testimony in favor of his wife.
On October 23, 1996, the father petitioned for custody of C.D., alleging that the conditions that had led to C.D.’s being dependent no longer existed. By November 1996, the father and stepmother were divorced. Following a hearing on December 9-10, 1996, at which DHR withdrew its dependency petition and recommended that C.D. be returned to her father, the juvenile court determined that C.D. was no longer dependent; it returned her, with certain restrictions during a “phase in” period, to the custody of her father. The grandparents appeal, raising four issues.
I
The grandparents first contend that the trial court’s judgment is so unsupported by the evidence as to be plainly and palpably wrong. We disagree.
It is clearly within the court’s discretion to determine matters of dependency and custody, particularly when evidence is presented ore tenus. The court’s judgment is presumed correct and will be set aside only if it is unsupported by the evidence and is therefore plainly and palpably wrong. J.M. v. State Dep’t of Human Resources, 686 So.2d 1253 (Ala.Civ.App.1996); H.A. v. Limestone County Dep’t of Human Resources, 628 So.2d 948 (Ala.Civ.App.1993). Although this court has grave reservations about the way in which DHR handled this ease,[1] we will not allow DHR’s mismanagement to inure to the benefit of the grandparents when the trial court had evidence before it from which it could be determined that it was in the child’s best interest to be returned to her father’s custody.
Initially, we note that a primary goal of the Alabama.Juvenile Justice Act is “[t]o reunite a child with his parents as quickly and safely as possible when the child has been removed from his parents’ custody.” Ala. Code 1975, § 12-15-1.1. The trial court’s conclusion that “it is in the best interest of [C.D.] that she be returned to the custody of her father subject to certain restrictions and conditions” is not plainly and palpably wrong.
The evidence clearly established that C.D. had been found dependent because of the physical abuse by her stepmother. The evidence presented at trial established that, although the father had originally maintained that the stepmother was innocent (believing that the stepmother had accidentally burned the child) and had even attempted to influence the child’s testimony to that effect, the *1094 father had eventually become convinced that the stepmother had intentionally burned the child. The evidence presented at trial established that the father had divorced the stepmother and that she, therefore, no longer presented a danger to the child. The guardian ad litem recommended that the father and his daughter be reunited.
There was a conflict in the testimony regarding whether the father had dealt with some emotional issues that had been identified by DHR as requirements for reunification with his daughter. The trial court heard the father’s testimony and was in the best position to evaluate his credibility, sincerity, and dedication to achieving the kind of stability that would allow reunification with his daughter. We cannot substitute our judgment for that of the trial court on such issues.
We note that the trial court’s order did not grant an abrupt change of custody but, instead, provided for a gradual transition in custody. The court ordered that the change in custody be “phased in” so that C.D. would have time to adjust to leaving her foster family, with whom, the trial court found, C.D. had formed a strong attachment. The order also provided that, after reunification, C.D. was to continue with individual counselling and the family was to continue with family counselling. The counsellors were required to submit quarterly reports to the juvenile court, and DHR was to monitor the placement and report to the court within 90 days. The court stated that it would review the matter within six months.
The juvenile court is authorized to view the totality of the circumstances when making a finding in a dependency proceeding. D.P. v. State Dep’t of Human Resources, 571 So.2d 1140 (Ala.Civ.App.1990). In light of all the circumstances, we cannot hold that the trial court’s order returning the child to the custody of her father was plainly and palpably wrong.
II
Relying on § 12-15-65(a), Ala.Code 1975, the grandparents argue that the trial court erred by permitting DHR to participate in the dispositional hearing. The grandparents maintain that, after DHR dismissed its dependency petition and recommended that C.D. be reunited with her father, DHR was no longer a party to the proceeding and should have been excluded. Section 12-15-65(a) provides:
“Hearings under this chapter shall be conducted by the court without a jury and separate from other proceedings. The general public shall be excluded from ... dependency hearings and only the parties, their counsel, witnesses, and other persons requested by a party shall be admitted. Other persons as the court finds to have a proper interest in the case or in the work of the court may be admitted by the court on condition that the persons refrain from divulging any information which would identify the family or the child involved.”
(Emphasis added.)
Clearly, the trial court was within its discretion by allowing DHR to participate in the proceeding because DHR had custody of the child and, therefore, had “a proper interest in the case.”
Ill
The grandparents claim that the trial court abused its discretion by relying, in its final disposition order, on reports not made available to the parties and not subject to cross-examination.
The juvenile court’s order dated December 19,1996, held that C.D. was no longer dependent and that it was in her best interest to be returned to the custody of her father, subject to certain restrictions and conditions. The order outlined a gradual return to full custody and required the child’s counselor or DHR to make a report to the court concerning the child’s progress. In an order dated January 31, 1997, the juvenile court stated that, pursuant to the December 19, 1996, order of the court, DHR and Indian Rivers Mental Health Center had filed their reports. In its January 31 order, the juvenile court stated that upon review of the two reports it concluded that the father was to be awarded full custody of C.D.
The grandparents complain that they did not receive copies of the DHR report or the mental health center report and that they were unable to cross-examine the authors of the reports. Section 12 — 15—65(h) provides:
*1095 “In disposition hearings all relevant and material evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though not competent in a hearing on the petition. The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making reports.”
(Emphasis added.)
The grandparents did not raise in the juvenile court the arguments they now raise on appeal. This court stated in Syphrit v. Turner, 446 So.2d 626 (Ala.Civ.App.1983):
“In the case at bar the court informed the parties and their attorneys, in writing, that it had requested DPS to investigate the homes of the parties and report back to it no later than January 24, 1983. Thus, the parties were fully aware of the trial court’s request for reports from DPS and that the court would consider such reports in making its decision. The parties made no objection to the court’s request for DPS reports, nor did they make any effort to prevent the trial court from considering such reports in making its final decision. Under these circumstances, we consider that appellants have waived any objections they might have had to the DPS reports being considered by the trial court.”
446 So.2d at 628.
IV
Finally, the grandparents insist that the trial court erred by allowing the guardian ad litem to make a recommendation as to the child’s custody. They argue that, although §§ 12-15-8 and 12-15-63 provide for the appointment of a guardian ad litem in dependency proceedings, there is no statutory authority for allowing a guardian, once appointed, to make a recommendation as to the child’s custody.
Initially, we note that the grandparents waived the right to raise this issue by stating, at the close of all the evidence, ‘Your Honor, we would like the guardian ad litem to express to the court what his recommendation is prior to making any closing argument.”
Moreover, the authority of a guardian ad litem to make a recommendation as to custody, and the trial court’s ability to consider that recommendation, are inherent in the definition of a guardian ad litem. See § 12-15-1(8), Ala.Code 1975 (a guardian ad litem is “[a] licensed lawyer appointed by the court to defend or represent a child in any action to which such child may be a party”). Any doubt on this issue was put to rest by this court’s holding in S.D. v. R.D., 628 So.2d 817 (Ala.Civ.App.1993). There we stated:
“The paternal grandfather also contends that the trial court erred in considering the recommendation of the guardian ad litem. We find no merit in this contention. The guardian ad litem correctly observes that he is an officer of the court and is entitled to argue his client’s case as any other attorney involved in the case.”
628 So.2d at 818.
The judgment of the Bibb Juvenile Court is affirmed.
' AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.

. We fully concur with the following emphasized portion of the trial court's order:
"Bibb County DHR recommends that custody he returned to [G.D.]. This is true even though DHR appears to have made a recommendation without following its own policies and procedures in arriving at that decision."
(Emphasis added.) The evidence tended to show that DHR violated its own policy concerning nonrelative foster home placement rather than placement with the maternal grandparents. Further, it appears that DHR did not comply with its own policies regarding completion of ISP’s (“Individualized Service Plans”).
Finally, DHR’s choice of counselling resources for both the father and the child appears to be questionable at best. For example, the four-year old child had experienced, within the span of little more than a year, her mother’s untimely death, her father’s remarriage, her stepmother’s intentionally scalding her, and her father's attempt to change her testimony. A mental health evaluation at Children's Hospital had indicated that the child had post-traumatic stress disorder (PTSD) and the beginning of a dissociative personality disorder. Despite the severity ,of these emotional problems, DHR sent the child to a child and adolescent therapist with a master’s degree in counselling who was nationally certified but not licensed in Alabama. The therapist was relatively young and inexperienced: she had never dealt with a victim of child abuse and had never counselled a child with PTSD or dissociative qualities. Her treatment plan did not include dealing with either disorder. The therapist never observed the father and child together.
In addition, the father, whose mental health evaluation indicated the need for psychotherapy, was sent to a counsellor who permitted him to develop his own clinical goals. The goals chosen by the father had little or nothing to do with the reason for the child'.s being removed from, the home.