Rel:  November 8, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2024-0320

_____

## B.O. and K.O.

## v.

## C.T.

### Appeal from Chilton Juvenile Court
### (JU-12-212.02)

EDWARDS, Judge.

In February 2024, C.T. filed in the Chilton Juvenile Court ("the juvenile court") a petition seeking to have A.M. ("the child") declared a dependent child and seeking an award of her custody.  In her petition, C.T. alleged that the whereabouts of the child's parents, D.M. and S.M.,

were unknown, that the child had been in the legal custody of B.O. and K.O. ("the grandparents"), that the child had been living with C.T. since May 2023, and that the grandparents had given C.T. a "delegation of guardianship" in August 2023. In addition, C.T. alleged that the grandparents had subjected the child to "medical and dental neglect," that they were in bad health, and that they could not properly care for unnamed special-needs children who were in their care. The juvenile court awarded C.T. temporary emergency custody of the child and held a shelter-care hearing, after which it entered a shelter-care order awarding C.T. pendente lite custody of the child pending a trial on the dependency petition, which it scheduled for April 10, 2024.

After the trial, the juvenile court entered a judgment on April 17, 2024, awarding custody of the child to C.T.; that judgment did not find that the child was dependent. The grandparents filed a postjudgment motion directed to the April 17, 2024, judgment, specifically arguing that the juvenile court had failed to find the child to be dependent. The juvenile court then amended its judgment to find the child to be dependent. The grandparents filed a postjudgment motion challenging

the dependency finding, which the juvenile court denied. The grandparents appeal.

Section 12-15-102(8)a., Ala. Code 1975, in pertinent part, defines a "dependent child" as:

> "A child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:
>
> > "1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or any other child in the household to abuse, as defined in [Ala. Code 1975, §] 12-15-301[,] or neglect as defined in § 12-15-301, or allows the child to be so subjected.
> >
> > "2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.
> >
> > "3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.
> >
> > "....
> >
> > "6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.

"….

"8. Who, for any other cause, is in need of the care and protection of the state."

The term "neglect" is defined in Ala. Code 1975, § 12-15-301(9), as "[n]egligent treatment or maltreatment of a child, including, but not limited to, the failure to provide adequate food, medical treatment, supervision, education, clothing, or shelter."

We have also explained that

"[a] finding of dependency must be supported by clear and convincing evidence. Ala. Code 1975, § 12-15-310(b). When a juvenile court has not made specific factual findings in support of its judgment, we must presume that the juvenile court made those findings necessary to support its judgment, provided that those findings are supported by the evidence. K.C. v. Jefferson Cty. Dep't of Human Res., 54 So. 3d 407, 413 (Ala. Civ. App. 2010). In addition, the juvenile court may consider the totality of the circumstances when making a finding in a dependency proceeding. G.C. v. G.D., 712 So. 2d 1091, 1094 (Ala. Civ. App. 1997); see also D.P. v. State Dep't of Human Res., 571 So. 2d 1140 (Ala. Civ. App. 1990)."

T.D. v. S.R., 293 So. 3d 434, 436 (Ala. Civ. App. 2019).

C.T. testified that she knew the child and the grandparents from church and that the child had stayed with her intermittently during summer and school breaks in 2021, 2022, and 2023. She said that, in May 2023, the child, who was 15 years old at the time of the April 2024

4

trial, had come to live with her for the summer but that, as August 2023 approached, the child had indicated that she did not want to return to the home of the grandparents. According to C.T., although the child had suffered no neglect or abuse at the hands of the grandparents, she had had "problems" at school and at the grandparents' home, which, C.T. said, at one time had housed 4 adults and 11 children. Based on those issues, C.T. said, she had discussed with the grandparents the child's being allowed to live with C.T. so that she could attend a different school. C.T. said that the grandparents had executed "guardianship papers" in August 2023 but that they had revoked the guardianship in late January 2024.

C.T. further testified that, although she had not investigated the child's health in May 2023, she had learned in late July or early August 2023 that the child had not been to the dentist in over a year. C.T. said that she took the child to the dentist, that the child had had three cavities, and that she had also arranged an appointment for the child to have her wisdom teeth removed. C.T. also testified that the child had been diagnosed with juvenile rheumatoid arthritis ("JRA") and that she takes biweekly injections to treat that disease. She said that the child

had missed some of those injections in the summer of 2023 and that she had learned that the child had also had a rescheduled appointment with her rheumatologist and had missed an appointment with that physician. C.T. explained that she had had to reinstitute the child's appointments with that physician and get a new prescription for the child's injectable medication. She said that, although the child was regularly receiving the injectable medication at the time of the April 2024 trial, the medication was not providing the child lasting relief and that, as a result, the child was suffering from pain. However, C.T. did not testify that the child had suffered in any way from the symptoms of JRA during the summer of 2023.

According to C.T., the child had been receiving Social Security disability benefits as a result of her JRA diagnosis. She said that, until January 2024, she had not been receiving those checks, despite the fact that the child had been living in her home since May 2023. In addition, C.T. explained that, after a hearing held in October 2023, the Social Security Administration had determined that the child was not disabled and had issued a ruling in April 2024, shortly before the date of the trial, requiring that the disability payments that the child had received

6

between February 2022 and January 2024 be repaid. C.T. testified that, in January 2024, K.O. had asked for the disability check because, she said, K.O. had indicated that she could not meet her family's expenses without it.

C.T. said that the child was doing well in school and that she was very involved with the school's theater program and in the youth group at church. When asked whether it would be detrimental to the child to return her to the custody of the grandparents, C.T. answered that it would be emotionally detrimental. She also stated: "I just wanted to give her a different life than what she had." When cross-examined, C.T. admitted that the financial issues that the grandparents might have, and their less desirable home, did not make the child dependent. However, she later indicated on redirect that she believed that the child was dependent based upon medical and dental neglect, as she had alleged in her dependency petition. She also said that the child "gets to be a kid at my house. She gets to be 15 years old. She gets to go do things with my 17-year-old daughter."

K.O. testified that she and B.O. had had custody of the child since she was four years old. She said that she also had custody of the child's

four siblings, two of whom are disabled, and the child's cousin. She stated that her house has five bedrooms and that, when the child had lived in the home, she had had her own room. She said that, in May 2023, her adult son, J.; his wife, B.; and their three children were also living in the home and that the child and B. had had some words over the child's leaving her personal items strewn around the room and bathroom. She also admitted that the child had had some issues at school and that they had had difficulty working out those issues because the school system was in the middle of changing superintendents. She explained that an issue with bullying at school had been addressed once the new superintendent was in place.

K.O. explained that she had experienced financial issues in January 2024 when the child's Social Security disability check was rerouted to C.T. She said that she had not budgeted for that change in income at that time but had since consolidated her family's debts and had sufficient income to provide for the family at the time of the trial. She said that the family has enough monthly income to provide for the family from B.O.'s monthly Social Security disability benefits of $1,058 and the $1,868 in total monthly Social Security supplemental income that two of

the children in her care receive based on their cerebral palsy diagnoses. K.O. also admitted that, in May 2023, the child had not seen the dentist in a year. She denied that the child had missed more than one appointment with the rheumatologist. She explained that she had been out of the state attending to her ill sister and had had to engage in a telephone consultation with the rheumatologist in March 2023 but that the child had missed only one appointment with that physician. She further testified that the child had been taking her injectable medication during the summer of 2023 when she was at the grandparents' home. She denied that the child had missed more than two doses of the medication.

B.O. testified that he and K.O. could care for the child. He indicated that he had intended that the child would live with C.T. only for a time so that she could attend school while the issues with a bully at her former school were addressed. He also said that he and K.O. were in good physical shape.

In their brief on appeal, the grandparents argue that the evidence presented to the juvenile court is not sufficient to support a finding of dependency. We agree. The evidence presented to the juvenile court did

not rise to the level necessary to support a finding that the child was neglected by the grandparents. See S.K. v. Madison Cnty. Dep't of Hum. Res., 990 So. 2d 887, 901 (Ala. Civ. App. 2008) (rejecting, in an appeal from a termination-of-parental-rights judgment, a finding that a father had neglected to provide appropriate dental care for his child when he had not taken the child to the dentist despite the fact that she had intermittently complained of a toothache). Although the child missed a dental appointment or two and one or two appointments with her rheumatologist, missing an appointment is not, in and of itself, evidence of neglect. Similarly, the possibility that the child might have missed administration of her medication is not, alone, sufficient to amount to neglect of her medical needs. In fact, C.T. testified that, as of the time of the trial, the medication was not working well to address the child's symptoms and that she was, at that time, experiencing pain between injections despite its regular use. Moreover, the record does not disclose that the child was denied medical or dental care for any emergency or pressing symptoms. Although the grandparents were perhaps not providing optimal medical care to the child, the evidence presented to the juvenile court does not rise to the level sufficient to determine that the

10

grandparents were not providing "adequate … medical treatment" to the child such that she was rendered dependent. § 12-15-301(a).

The only other possible basis for the dependency finding made by the juvenile court is the limited financial resources of the grandparents. We have, in the context of termination-of-parental-right actions, stated that poverty alone cannot form the basis of a conclusion that parental rights should be terminated. See, e.g., S.K., 990 So. 2d at 900 (indicating, in an appeal from a judgment terminating parental rights, that poverty alone is not a sufficient basis for terminating parental rights); Bowman v. State Dep't of Hum. Res., 534 So. 2d 304, 306 (Ala. Civ. App. 1988) (explaining that poverty alone, without proof of abuse or neglect, cannot form a ground for terminating a parent's parental rights). However, in a dependency case, a parent's inability to provide care for his or her child because of limited financial means can serve as a basis for a finding of dependency. See K.D.S. v. M.P., 392 So. 3d 760 (Ala. Civ. App. 2023). Although the record contains evidence indicating that the grandparents had been in financial straits in January 2024, when the child's Social Security disability check was rerouted to C.T., C.T. presented no evidence indicating that the grandparents' limited financial means had prevented

11

them from adequately parenting the child before the child began living with her or after January 2024. K.O. and B.O. both testified that they could provide for the child, and K.O. explained that she had taken steps to consolidate the family's debts so that they would be better positioned financially. Thus, the juvenile court could not have been clearly convinced that the grandparents could not provide for the child because of their limited income.

Although C.T.'s motives appear to be pure, a finding of dependency cannot be founded on a desire to "give [the child] a different life than what she had." C.T. admitted that the grandparents have not abused the child, and we have determined that the child suffered no neglect at the hands of the grandparents. Accordingly, we reverse the judgment of the juvenile court and remand the case for the entry of a judgment dismissing C.T.'s dependency petition. See Ala. Code 1975, § 12-15-310(b) (stating that, "[i]f the juvenile court finds that the allegations in the petition have not been proven by clear and convincing evidence, the juvenile court shall dismiss the petition").

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson, Fridy, and Lewis, JJ., concur.