This is a child custody case.
After receiving an anonymous report of child neglect regarding Jason, Peter and Candy Shivers on September 29, 1980, personnel from the Baldwin County Department of Pensions and Security (DPS) visited the Shiverses' home. They found conditions there to be filthy. There were holes in the wall, dirty floors, and garbage knee-deep in the kitchen. The linens on which the children slept were black with dirt. The children were improperly clothed, dirty, malnourished and smelled of urine. One child had such a severe case of diaper rash that the affected area was raw and bleeding.
Numerous subsequent visits by DPS and Public Health personnel between November 21, 1980 and May 26, 1981, revealed that the home continued to be in "deplorable" condition. Food was thrown about. The house was cluttered with dirty diapers, dirty clothes, trash and beer cans. There was no evidence of even a minimal attempt at cleaning. There was no electricity nor running water. The entire house smelled of urine and body odor. The children were caked with dirt and slept on urine-soaked mattresses, which were black with dirt.
Due to the continued filthy conditions, DPS petitioned for and received temporary custody of all three children on June 16, 1982. Physical examinations at that time showed the two younger children, twin boys Jason Paul and Peter DeWayne, to be anemic and malnourished. Jason Paul had a neurological disorder. Although twenty-five months old, he could neither talk nor crawl. Expert testimony indicated that this was due to neglect.
The oldest child, Candy Lynn, appeared stunted and very withdrawn, indicating obvious abuse. She had a deep cigarette burn *Page 1083 
to the skull and impetigo secondary to untreated infected insect bites. She also suffered from rectal bleeding caused by Giardia, a gastrointestinal parasite, normally caused by poor hygiene. Evidence shows that she suffered from one of the worst cases of Giardia ever reported in the southeastern United States.
Following the award of temporary custody and placement of the children in foster homes, DPS entered into a service agreement with the Shiverses, whereby the children would be returned to them if the Shiverses kept the house clean and showed that they would care for the children's medical needs. DPS informed the Shiverses that if conditions did not improve, the department would seek permanent custody. To aid the Shiverses in improving home conditions, DPS provided employment, housing and hygiene counseling.
Conditions in the home did not, however, improve. Subsequent DPS visits showed dirty dishes and clothes still lying about. There was still no running water or electricity. The Shiverses also failed to fill out forms for free medical care and failed to keep appointments to visit their children.
Consequently, DPS petitioned for permanent custody. At trial, in addition to the previously stated evidence, evidence was admitted showing that Mr. Shivers was a heavy drinker; that the family had been evicted for nonpayment of rent; that both parents had previously been convicted of burglary; and that Mr. Shivers was on probation relating to another conviction for theft. It was also shown that the mother had lost custody of another child eight years earlier and that she had made no attempt to visit the child for the last seven years, even though she had visitation rights and the child lived in the same general community.
After hearing the foregoing evidence, the Juvenile Court of Baldwin County awarded permanent custody to DPS on March 21, 1983.
The natural parents appeal here. They raise six issues on appeal. They assert that the trial court failed to inform them of their possible loss of custody as required by Rule 24 of the Alabama Rules of Juvenile Procedure (A.R.J.P.). They contend that with such knowledge they could have improved home conditions, worked out an agreement with DPS, or discussed viable alternatives with counsel. Rule 24 provides that the juvenile court should inform the parties of their rights, the allegations in the petition, and the nature of the proceeding. Similarly, § 12-15-65 (b), Code of Alabama 1975, provides that: "The parties [to juvenile proceedings] shall be advised of their rights under the law in their first appearance at intake and before the court."
Only after the requirements of § 12-15-65 (b) have been met, may the trial court proceed to make a proper disposition of a case. Gallagher v. State, 425 So.2d 1079 (1983). However, where the parties have actual notice of the allegations contained in the petition, strict compliance with § 12-15-65 is not required. Phillips v. Alabama Department of Pensions andSecurity, 394 So.2d 51 (Ala.Civ.App. 1981). The record shows that the petition adequately notified the parents and that they were otherwise informed that their rights were in jeopardy.Miller v. Alabama Department of Pensions and Security,374 So.2d 1370 (Ala.Civ.App. 1979). Therefore, there was no error.
The parents also assert that the trial court erred in not requiring DPS to provide evidence of alternative custody plans for the three children. Such evidence is not required. Smith v.State Department of Pensions and Security, 340 So.2d 34
(Ala.Civ.App. 1976). Although we are not bound by the decision in Roe v. Conn, 417 F. Supp. 769 (M.D.Ala. 1976); Smith, supra
at 37, the record clearly shows that the due process requirements enumerated there have been met. Several alternatives including counseling, temporary custody and assistance were attempted before the Shiverses' rights were terminated. The trial court, finding none of these alternatives to be in the children's best interest, properly placed them under DPS custody. All that DPS was *Page 1084 
required to show was that terminating the parents' rights was in the children's best interest and that the department was equipped to provide care. § 12-15-71 (a)(3)(a), Code 1975, Inre Sanders, 420 So.2d 790 (Ala.Civ.App. 1982). We believe the record shows that DPS so proved and that there was sufficient evidence to support the trial court's determination of custody.
The parents also assert that the trial court erred by (1) allowing DPS to use leading questions on direct examination; (2) allowing a nurse to testify as to proper hemoglobin counts; and (3) taking judicial notice of material facts in dispute. We find no ground for reversal. In juvenile proceedings, where the proper custodian of a child is to be determined, the trial court has wide latitude to decide which evidence it will consider; which is competent, relevant and material. Worley v.Jinks, 361 So.2d 1082 (Ala.Civ.App. 1978). The weight to be afforded the evidence is a matter of judicial discretion.Fassina v. Fassina, 401 So.2d 113 (Ala.Civ.App. 1981). The record shows that identical evidence was admitted without objection. Thus, all three alleged errors are harmless within Rule 45, A.R.A.P. Bowlen v. State Department of Pensions andSecurity, 51 Ala. App. 665, 288 So.2d 728 (1974).
The final alleged error, admission of the mother's loss of custody of another child eight years earlier, was not error at all. It was properly admitted to show her general lack of concern for the welfare of her children. Because the child's best interest is the controlling consideration, the trial court may examine the conduct and activities of the parent. Crews v.Houston County Department of Pensions and Security,358 So.2d 451 (Ala.Civ.App. 1978).
Finding no prejudicial error, we affirm.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.