WRIGHT, Presiding Judge.
This is a case of termination of parental rights. The only issue on appeal is whether there was clear and convincing evidence before the trial court to support its order terminating the parental rights of Jamie and Earl Hickman.
On November 3, 1983, the Tallapoosa County Department of Pensions and Secur *602 ity (DPS) received a complaint from Russell Hospital indicating that Earl Hickman, the father of a premature baby girl, was threatening to remove the child from the hospital and that the hospital believed that the baby’s life would be endangered. A temporary verbal restraining order was issued on November 7, 1988, to prevent the father from removing the baby from the hospital. DPS later filed a petition for temporary legal custody, which was granted.
The baby was allowed to go home from the hospital with the parents on the condition that they live with the mother’s aunt, Ruth Wesson. However, on November 19, 1983, DPS removed the child from the home and placed it in an unrelated foster home, because the father was allegedly once again attempting to place the child in a potentially life-threatening situation. The child has remained in foster care since that time.
A petition was filed by DPS in the Talla-poosa County Juvenile Court in May 1985, seeking permanent custody and termination of parental rights for the child. The petition alleged that the reason for the termination of parental rights was the total inability of the parents to provide financial support, emotional support, medical treatment, food, clothing and shelter for the child. The petition further alleged that the child was a special needs child and that the mother and father were unable to meet her needs in any respect. After a hearing, the court granted the petition of DPS. The mother and father appeal from that judgment.
Natural parents have a fundamental and prima facie right to the custody of their child. Glover v. Alabama Department of Pensions and Security, 401 So.2d 786 (Ala.Civ.App.1981). There is a presumption that the child’s best interest will be served by placing it in the custody of the natural parents. Vinson v. AGAPE of Central Alabama, Inc., 416 So.2d 1075 (Ala.Civ.App.1982). This presumption may be overcome only where there is clear and convincing evidence that it would not be in the child’s best interest to be in the natural parents’ custody. Matter of Moore, 470 So.2d 1269 (Ala.Civ.App.1985). The court must make several findings in order to terminate parental rights. The court must first find that the child is dependent based on clear and convincing evidence. § 12-15-65(e), Code of Alabama 1975. If the court finds that the child is dependent, it must then find that there exists no viable alternative to termination of the parents’ custodial rights. Matter of Burnett, 469 So.2d 627 (Ala.Civ.App.1985).
There was a lack of clear and convincing evidence before the trial court to terminate parental rights in this case. The evidence reveals that at the time of the hearing the father was employed as a construction worker and that his gross pay was $205 per week. It further revealed that he has maintained some form of employment during the entire length of the marriage. The mother attended and completed parenting skills classes as was required by DPS. Another child was born to these parents in June 1984. A social worker for DPS testified that the parents are now functioning as a family unit and have taken care of the second child adequately. She further testified that they are presently living in an adequate shelter for both children. DPS has never given the parents a trial custody with their child. The evidence reveals that the parents have moved repeatedly during the nineteen months that their child has been in foster care. It was evident that the primary cause of the nomadic life was the inability of the parents to meet the cost of rent and utilities and live. Such inability was not due to failure of the father to work. He was undisputedly nearly always employed in construction work but earning very low wages. The parents have never received any aid from DPS, but are now faced with termination of basic constitutional rights of parents because they are financially unable to bring their family up to a standard established by DPS. Poverty and limited mentality of a mother, in the absence of abuse or lack of caring, should not be the criteria for taking *603 away a wanted child from the parents. Such should particularly be the case when there has been no apparent aid given toward keeping the family together by the agency seeking its termination.
One of the reasons given by DPS for taking permanent custody of the child is that she does not talk and appears to be slow mentally; however, there have been no tests made to determine the presence of mental retardation.
This court in recent months has considered and decided so many cases brought by DPS to terminate parental rights of children being kept in foster homes that such cases have become an impressive percentage of the court’s caseload. One might ponder if such an unusual number of cases indicates a new policy of DPS.
In this case, we find that the evidence presented does not rise to the high standard of clear and convincing that the child is so dependent that parental rights should be terminated. We reverse and remand this matter to the trial court for further observation and consideration of the parents’ ability to care for this child. It would appear that some aid, even in these times, might be given by DPS so that this family could exist together with the child returned from foster care. If the child is mentally retarded, the extent of the retardation should be determined and perhaps treatment made available.
REVERSED AND REMANDED.
HOLMES, J., concurs.
BRADLEY, J., concurs in the result only.