This case involves the termination of parental rights.
In April 1992, the Montgomery County Department of Human Resources (DHR) filed a petition requesting the court to terminate the parental rights of L.N. (mother) and several putative fathers as to B.N. (child). Following an ore tenus proceeding, the petition was granted in August 1992. Only the mother appeals.
The dispositive issue is whether the trial court erred in terminating the parental rights of the mother.
The termination of one's parental rights is an extreme matter that is not considered lightly. Our Supreme Court expressed its concern by stating that "[p]arental rights are indeed cherished and deserve the law's utmost protection against unwarranted interference." Ex parte Beasley, 564 So.2d 950, 954 (Ala. 1990). Ala. Code 1975, § 26-18-7(a), *Page 929 
provides that the trial court may terminate parental rights if it finds from clear and convincing evidence
 "that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future. . . ."
That section enumerates some of the factors a trial court shall consider in determining whether the parents are unable or unwilling to discharge their parental responsibilities. Further, Ala. Code 1975, § 26-18-7(b), provides that when, as here, the child is not in the physical custody of its parents, the court shall also consider, inter alia, whether the parents have provided for the material needs of the child, whether the parents have maintained regular visitation and consistent contact with the child, and whether the parents have put forth effort to adjust their circumstances to meet the needs of the child.
Additionally, our Supreme Court has held that when the State is the petitioner in termination proceedings, the trial court must apply a two-pronged test in determining whether to terminate the parental rights. Beasley, supra. First, the trial court must find from clear and convincing evidence that the child is dependent, and second, the trial court must determine that all viable alternatives to termination have been considered. Beasley, supra.
In the instant case, the mother does not challenge the finding of dependency. She argues primarily that her prima facie right to custody of her child was not properly considered, that the trial court did not have clear and convincing evidence that she is unable or unwilling to discharge her responsibilities as a parent, and that the trial court failed to properly consider less drastic alternatives to termination of her parental rights.
The law is well settled that a natural parent has the prima facie right to custody of her child; however, that right can be overcome by clear and convincing evidence that permanent removal from the parent's custody serves the best interests of the child. East v. Meadows, 529 So.2d 1010 (Ala.Civ.App. 1988). Notwithstanding the prima facie right to custody, the best interests of the child are controlling. Matter of Burnett,469 So.2d 627 (Ala.Civ.App. 1985). There is a strong presumption that a child's best interests will be served by allowing it to be in the custody of the natural parent. Hickmanv. Alabama Department of Pensions Security, 489 So.2d 601
(Ala.Civ.App. 1986).
Record evidence indicates that DHR has been involved with the mother since she was very young. Her background included being placed in foster homes when she was a child. At the time of the hearing in this case, the mother was twenty years old and reportedly continuing her runaway lifestyle and involvement in prostitution.
The record reveals the following facts concerning the child and the mother. B.N. was born in April 1991, and the mother is uncertain who fathered the child. DHR's contact with the child was initiated in July 1991, from a complaint alleging neglect of the child. Upon investigation of that complaint, a DHR social worker was able to locate the child with the mother and found that he was small for his age and appeared malnourished. When the mother was unable to respond to questions regarding the child's formula and amounts which the child received daily, arrangements were made to have a worker instruct the mother regarding basic infant care. When the worker came to assist the mother, she was uncooperative and refused assistance. The mother also failed to follow through with taking the child to a pediatrician.
In August 1991, a removal order was granted to allow DHR to obtain necessary care and treatment for the child; however, the mother and the child were not located again until October 1991. In foster care, the child began to thrive, and in January 1992, temporary legal custody of the child was awarded to DHR.
DHR continued trying to work with the mother to reunite the family. The mother *Page 930 
continued moving from place to place, often failing to keep appointments, and refusing services, including job training, transportation, parenting classes, relocation, financial assistance, and homemaker services. Although the mother occasionally visited the child, when such was precipitated by DHR, she made no efforts or requests to spend time with her child for Christmas, his birthday, or any other time. Test results of the mother reveal a low I.Q. She has never worked, has no income except occasional government assistance, moves frequently from place to place, and has made no efforts towards discharging her responsibilities as a parent, in spite of opportunities of assistance provided by DHR. The record contains ample evidence that during the year DHR attempted to reunite the child and the mother, the mother never provided for the material needs of the child, she failed to maintain consistent contact with the child, and she put forth no effort to adjust her circumstances to meet the needs of the child. The record overflows with evidence supportive of the trial court's findings that the mother is "unable or unwilling" to discharge her responsibilities to and for her child.
The record is also brimming with evidence regarding consideration of less drastic alternatives to the termination of the mother's parental rights. In addition to considering three putative fathers and their relatives for possible placement of the child, many of the mother's relatives were considered, but were found to be unwilling, unable, or unsuitable to care for the child.
The record is replete with clear and convincing evidence that termination of the mother's parental rights serves the child's best interests. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.