This case involves the termination of parental rights of M.K., the mother, and A.P., the father, in regard to M.A.K., the child.
The issue is whether the Court of Civil Appeals erred in reversing the trial court's determination that it was in the best interest of the child to terminate parental rights. We hold that it did.
The Department of Human Resources ("DHR") had been involved with the mother, M.K., since 1977. DHR provided services to M.K. and two children born before M.A.K. was born. On August 21, 1989, the hospital at which M.A.K. was born notified DHR that M.A.K. had been born. A DHR caseworker visited M.K. at the hospital and asked her whether she was planning to take the child home. M.K. stated that she did intend to take the child home with her.
A social worker from DHR visited the home on August 22, 1989. At that time she found the home to be unsanitary and in "deplorable" condition. There were dirty clothes and objects on the floor of the home, the beds were unmade and the bed linens were dirty, and there were no utilities. There were no supplies for a baby, i.e., no baby bed, no baby food, no baby clothes. Also, there were nine people living in the house. M.K. shared a bedroom with A.P. and with a sister of M.K. Another sister of M.K., that sister's child, M.K.'s brother, and the brother's girlfriend slept in another bedroom. M.K.'s parents slept in the living room.
The social worker talked with the child's father, A.P., who told her that he was going to buy supplies for the child with a credit card. He also stated that the utilities would be turned on the next day. The social worker obtained a court order for immediate shelter care for the child.
In April 1991, DHR filed a petition requesting that the court terminate the parental rights of M.K. and A.P. The petition contained the following allegations:
 "(1) The parents, or one of them, have an emotional illness, mental illness . . . the duration or nature of which render the parents, one or more of them, unable to care for the needs of said child; (2) reasonable efforts by the Madison County Department of Human Resources leading toward the rehabilitation of the parents, or one of them, have failed; (3) The parents, or one of them, have failed to provide for the material needs of the child or pay a reasonable portion of said child's support, even though able to do so; and (4) the *Page 591 
parents or one of them, have failed to adjust their circumstances to meet the needs of the child [in] accordance with agreements reached with the Madison County Department of Human Resources or the Juvenile Court of Madison County, Alabama."
(C.R. 10).
At the hearing, a social worker testified that she had offered to help M.K. locate adequate housing and that several times M.K. had stated that she was "going to" move within a week or a month, but had never done so. The social worker also stated that financial assistance was offered to M.K. and A.P. to help them find adequate housing.
A social worker who had been involved with M.K. and her other two children stated that the parental rights of those children had been terminated in November 1989. She stated that M.K. needed to establish her own residence, because her family members would tell her that she did not need to do what the social worker asked her to do.
Another social worker visited M.K.'s home immediately before the hearing and found bugs crawling out of the sink, bugs in the bathroom, and bugs in the refrigerator. There were exposed light sockets and windows that had been boarded shut. Trash and debris were on the floor, along with several empty whiskey bottles. There was water on the floor in the utility area that had been there on the social worker's prior visit to the home approximately one month earlier. There was broken glass on the back porch, which the family members stated had been there since they moved in.
A psychologist testified that M.K. and A.P. were functionally illiterate and needed counseling in order to develop the proper home environment for rearing a child. There was testimony favorable to M.K. and A.P., indicating that they had regularly visited the child during scheduled times while the child was in foster care. M.K. attended a parenting class and A.P. maintained employment during this period. However, there was no evidence that M.K. or A.P. tried to improve the condition of the home or their circumstances. The social worker told M.K. that it would be necessary for her to have some kind of income, but M.K. never found employment.
The trial court found clear and convincing evidence that it was in the best interest of the child to terminate the parental rights of M.K. and A.P. The court also found that reasonable efforts had been taken to prevent or eliminate the need to remove the child from her parents.
The Court of Civil Appeals held that the parents had shown a willingness and desire to parent this child, but had not been afforded the opportunity to do so because the child had been taken from them immediately after her birth. The court stated that "while the parents have failed to provide financial assistance, i.e., material needs for the child, they have clearly maintained contact and visitation with the child as allowed by DHR, and have attempted, albeit unsuccessfully, to adjust their circumstances to meet the needs of the child."A.P. v. Department of Human Resources, 624 So.2d 586
(Ala.Civ.App. 1992). The court concluded that the trial court did not find that the parents were unwilling or unable to discharge their responsibilities for the child and that it had not found that such conduct or conditions existed as to render the parents unable to care for the child and that such conduct or condition was unlikely to change in the future. The Court of Civil Appeals reversed the judgment terminating parental rights, instructing the trial court to conduct further proceedings, "which could include" a determination of "whether the conditions are proper to care" for the child and the "likelihood of such conditions changing in the foreseeable future." 624 So.2d at 589.
A parent has a prima facie right to custody of his or her child and this right can be overcome only by clear and convincing evidence that the child's best interests would be served by permanently terminating the parent's custody.R.C.M. v. State Dep't of Human Resources, 601 So.2d 100
(Ala.Civ.App. 1991). The best interest of the child is the primary concern in a proceeding to terminate parental rights. R.C.M.
Section 26-18-7, Ala. Code 1975, a part of the Child Protection Act, sets out the statutory *Page 592 
grounds for termination of parental rights, as follows:
 "(a) If the court finds from clear and convincing evidence, competent, material and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
 "(1) That the parents have abandoned the child, as herein defined;
 "(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child;
 "(3) That the parent has tortured, abused, cruelly beaten or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat or otherwise maltreat the child, or the said child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling;
 "(4) Conviction of and imprisonment for a felony;
 "(5) Unexplained serious physical injury to the child under such circumstances as would indicate that such injuries resulted from the intentional conduct or willful neglect of the parent;
 "(6) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
 "(b) Where a child is not in the physical custody of its parent or parents . . ., in addition to the foregoing, [the court] shall also consider, but is not limited to the following:
 "(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.
 "(2) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the department, or any public or licensed private child care agency, and agreed to by the parent.
 "(3) Failure by the parents to maintain consistent contact or communication with the child.
 "(4) Lack of effort by the parent to adjust his circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.
". . . ."
(Emphasis added.)
The record reveals that M.K. and A.P. did not comply with DHR's request that they obtain adequate housing. M.K. and A.P. failed to correct their living conditions, and there was no evidence that they would have done so in the future. The condition of the house was unsanitary and unsafe for an infant, and no preparations were made for taking care of the child. The number of people in the house, the sleeping arrangements, and the condition of the house could not provide a healthy, stable environment for an infant. Although the Court of Civil Appeals seemed to focus on an indication of the parents' willingness to care for the infant in that they showed up for scheduled visits with the child, this alone does not defeat an effort by DHR to satisfy the requirements of § 26-18-7.
This Court held in Ex parte Beasley, 564 So.2d 950
(Ala. 1990), that when the State is petitioning to terminate parental rights, the trial court must find from clear and convincing evidence that the child is dependent and that the court must determine whether all *Page 593 
viable alternatives to termination have been explored.
It is clear from the record that M.A.K. was dependent; she was an infant and needed constant supervision and care. Also, the trial court found that alternatives to termination had been considered. Specifically, the trial court stated that reasonable efforts had been made to eliminate the need to remove the child from her parents. The record supports this finding, because it shows that the parents had failed to make any changes in their living conditions even after DHR requested them to accomplish rehabilitation. Also, no alternative family placement was available, because the extended family all lived in the same house with the mother and father.
The Court of Civil Appeals seems to indicate in its opinion that the trial court was required to make written findings regarding whether the conditions were proper for rearing an infant and regarding whether the conditions were likely to change in the "foreseeable future." There is no such requirement in the Child Protection Act. The Court of Civil Appeals has previously held that detailed findings in a termination order are preferable, but are not required.M.J.G.L. v. State Department of Human Resources, 587 So.2d 1004
(Ala.Civ.App. 1991). Also, a nonparticularized finding by the trial court that a child is dependent is also a finding that the allegations in the dependency petition are true and the trial court need not make a specific finding on the allegations. Grant v. State Department of Human Resources,560 So.2d 1050 (Ala.Civ.App. 1989).
In the present case, the petition alleged that the parents were "unwilling or unable to discharge their responsibilities to and for this child or that the conduct or condition of the parents was such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future." Certainly, the record supports the allegations in the petition concerning the parents' inability to discharge their responsibilities to the child, and the conditions of the parents have not changed.
We note that the trial court heard evidence that M.K.'s parental rights in regard to two other children had been terminated in 1989. See M.F.K. v. Department of HumanResources, 571 So.2d 317 (Ala.Civ.App. 1990). A court may consider the past history of the family, as well as evidence of its present conditions. Fitzgerald v. Fitzgerald, 490 So.2d 4
(Ala.Civ.App. 1986). In In re Shivers, 440 So.2d 1081
(Ala.Civ.App. 1983), the Court of Civil Appeals held that because the child's best interest is controlling in a termination proceeding, the trial court may consider a parent's loss of custody of other children.
The trial court's decision in proceedings to terminate parental rights is presumed to be correct when the decision is based upon ore tenus evidence, and such a decision based upon such evidence will be set aside only if the record shows it to be plainly and palpably wrong. M.J.G.L., 587 So.2d 1004. We hold that the trial court did not err in terminating the parental rights of M.K. and A.P. as to M.A.K.
Based on the foregoing, the judgment of the Court of Civil Appeals is reversed and the cause is remanded for an order consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.