THIGPEN, Judge.
This is a termination of parental rights case.
In May 1992, the Montgomery County Department of Human Resources (DHR) filed a petition alleging that G.M. (child) was dependent and that his thirteen-year-old mother, W.M. (mother), had failed to provide adequate care and medical attention for the child. After a hearing in August 1992, DHR was awarded temporary legal custody of G.M. In November 1992, DHR filed a petition alleging that the child was dependent and seeking to terminate the parental rights of W.M. and the putative father. After ore tenus proceedings in April 1993, the trial court granted DHR’s petition by finding G.M. to be dependent, terminating the parental rights of the mother and the putative father, and awarding permanent custody of the child to DHR. Only the mother appeals.
The single issue raised by the mother on appeal is whether the trial court erred in holding that there were no viable alternatives to termination of the mother’s parental rights.
We note at the outset that the termination of one’s parental rights is an extreme matter that is not considered lightly. Ex parte Beasley, 564 So.2d 950 (Ala.1990). The natural parent’s prima facie right to custody of his or her child can only be overcome by clear and convincing evidence that permanent removal from the parent’s custody serves the best interests of the child. L.N. v. State Department of Human Resources, 619 So.2d 928 (Ala.Civ.App.1993).
Ala.Code 1975, § 26-18-7(a), provides that the trial court may terminate parental rights if it finds from clear and convincing evidence that the parent is unable or unwilling to discharge his or her responsibilities to and for the child. The court considers several factors in making the determination of whether a parent is unable to discharge responsibilities to and for the child, including whether the reasonable efforts by DHR towards rehabilitation of the parent have failed. Ala.Code 1975, § 26-18-7(a)(6). Additionally, § 26-18-7(b) provides that where the child is not in the physical custody of the parents, the court shall also consider, inter aha: whether the parents have provided for the material needs of the child; whether the parents have maintained regular visitation and consistent contact with the child; and whether the parents have demonstrated efforts to adjust their circumstances to meet the needs of the child.
The record reveals that in January 1992, when the mother was thirteen years old, she prematurely gave birth to the child. The mother stayed intermittently with her father (maternal grandfather), her friends, and other family members. DHR’s involvement with this mother and child began in April 1992, because of a report of abuse and neglect relating to the child’s special medical needs and care. In May 1992, the child was diagnosed with dehydration, malnutrition, and pneumonia, and at that time, DHR peti *145 tioned to have the child placed in protective custody.
The record is replete with evidence of numerous attempts by DHR to rehabilitate the mother and to reunite the mother with the child. DHR’s recommended case plan was adopted by the trial court in August 1992. Among other things, the plan included the following recommendations: 1) that the mother should return to the custody of the child’s maternal grandfather, make his home her permanent residence, and abide by the rules of his household; 2) that she should attend parenting classes; 3) that she should increase visitation with her son; 4) that she should submit to a psychological examination and attend any recommended counseling; 5) that she should attend school daily; and 6) that the maternal grandfather should exert more parental responsibility over the mother and also attend parenting classes.
A social worker from DHR testified that the mother faded to comply with any of the provisions of the reunification plan. After attending only a few classes, the mother was discharged from the parenting program because of the mother’s lack of participation and her hostile attitude. The mother also did not complete psychological testing, nor did she attend school regularly, and she was in fact suspended from school on a few occasions. She also testified that the mother did not consistently reside with the maternal grandfather and that she did not maintain sufficient contact with the maternal grandfather to inform him of her whereabouts. Additionally, she testified that the maternal grandfather failed to attend parenting classes or to exert parental responsibility over the mother as recommended.
The record supports the trial court’s conclusion that the mother did not maintain regular visitation and consistent contact with the child. The social worker testified that a weekly visitation was established for the mother and that she regularly visited the child on four occasions, and then, with the exception of one visit in November when the child was in the hospital, the mother did not visit the child after mid-August 1992, nor did the mother request any visitation. Testimony indicated that the mother was incarcerated during most of the month of October 1992, and at the time of the parental rights termination hearing in April 1993, she was in the custody of the Department of Youth Services (DYS).
The mother testified that she loves the child and that she wants him to be with her. She testified that she had learned from her mistakes, and that when she is released from the custody of DYS, she intends to accept responsibility regarding school attendance and the care of her child. She also claimed that she attempted to visit the child, but that the social worker was not in the office at the time.
A primary function of the trial court in a nonjury trial is to determine the credibility and weight of the evidence in its effort to ascertain the truth. Lee v. Jackson County Department of Pensions & Security, 470 So.2d 1294 (Ala.Civ.App.1985). Where evidence conflicts, matters of dependency and custody rest peculiarly within the discretion of the trial court. Lee, supra. Furthermore, the determination of a trial court which is based upon ore tenus proceedings will not be disturbed on appeal unless it is unsupported by the evidence, and is therefore plainly and palpably wrong. Lee, supra.
When the State seeks to terminate parental rights, the trial court must apply a two-pronged test. Ex parte Beasley, supra. First, the court must find that the child is dependent based on clear and convincing evi- ' dence. Ala.Code 1975, § 12-15-65(e). Then, it must find that there are no viable alternatives to termination of parental rights. Ex parte Beasley, supra.
In the case sub judice, the trial court found that the child was dependent, and the record contains clear and convincing evidence to support this finding. The record also reveals that DHR investigated alternatives to the termination of the mother’s parental rights, and that it found no viable alternative relative placement. The maternal grandparents and the mother’s two older sisters were evaluated by DHR for possible alternative placement, but they were found to be unsuitable. One sister is an unemployed single mother of two children, who receives food *146 stamps and is dependent on public assistance. According to ■ a DHR court report, she was initially willing to serve as a resource until she was informed of the commitment involved. The other sister is a single mother of three children, who works full time in a fast-food restaurant and lives in a two-bedroom apartment with five people in her household. DHR had previously granted this sister custody of her younger brother. She testified at trial that she would be willing to accept custody of this child; however, the social worker testified that that sister has wavered in the past regarding her willingness to accept custody, and that she has indicated that to have another child in the home, she would have to quit her job and to rely on public assistance for support. This sister testified that she has only seen G.M. on two occasions, and that she knows of no other alternative placement for the child. Although DHR informed both sisters of the procedures for petitioning for custody, neither responded. DHR also considered relatives of the putative father for possible alternative placement. The putative father, an eighth-grade student who lives with his mother, has denied paternity, and he has shown no interest in the child. It is also noteworthy that no relatives have visited the child since he has been in the custody of DHR. Based on the evidence, the trial court properly concluded that DHR had investigated alternative relative placement for the child, and that there were no viable alternatives to termination of the mother’s parental rights.
The mother also argues that the trial court erred because it did not make a detailed finding regarding viable alternatives to the termination of parental rights. Although detailed findings may be preferable, they are not required. M.J.G.L. v. State Department of Human Resources, S87 So.2d 1004 (Ala.Civ.App.1991). After a thorough review of the record applying the attendant presumptions, we .find that there was clear and convincing evidence for the trial court to conclude that there were no viable alternatives to the termination of parental rights. Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.