THIGPEN, Judge.
This is a termination of parental rights case.
On January 18,1991, the Jefferson County Department of Human Resources (DHR) filed petitions alleging that G.N. (mother) and R.N. (father) had failed to provide adequate shelter and a safe and sanitary environment for their two infant children R.A.N. and R.A.N. On February 27, 1991, the trial court found the children to be dependent, and it granted temporary custody to the paternal grandmother. On December 1, 1992, DHR filed petitions again, alleging that the children were dependent and seeking to terminate the parental rights of the mother and the father. Following ore tenus proceedings, the trial court granted DHR’s petition. The trial court found that the children were dependent, terminated the parental rights of the mother and the father, and awarded permanent custody of both children to DHR. Both the mother and the father appeal, and their appeals are consolidated here.
The issue on appeal is whether there was clear and convincing evidence to support the trial court’s decision to terminate parental rights.
We note at the outset that the termination of one’s parental rights is an extreme matter which will not be considered lightly. Ex parte Beasley, 564 So.2d 950 (Ala.1990). The natural parent’s prima facie right to the custody of his or her child can only be overcome by clear and convincing evidence that permanent removal from the parent’s custody serves the best interests of the child. L.N. v. State Department of Human Resources, 619 So.2d 928 (Ala.Civ.App.1993). In determining the child’s best interests, the trial court must consider whether the parents are physically, financially, and mentally able to care for the child. J.L.B. v. State Department of Human Resources, 608 So.2d 1367 (Ala.Civ.App.1992).
Ala.Code 1975, § 26-18-7(a), provides that a trial court may terminate parental rights if it finds from clear and convincing evidence that the parent is unable or unwilling to discharge his or her responsibilities to and for the child. The court may consider several factors in making the determination of whether a parent is unable to discharge responsibilities to and for the child, including whether reasonable efforts by DHR leading toward rehabilitation of the parent have failed. Ala.Code 1975, § 26-18-7(a)(6).
The record reveals that DHR became involved with this family in March 1989, after receiving a report from a paramedic who was summoned to the home to treat the father for a possible heart attack. The paramedic reported possible carbon monoxide poisoning in the home, and he further reported concerns that the entire family might be suffering carbon monoxide poisoning because of an unventilated kerosene heater. A social worker from DHR testified that when she investigated this report, she found the home to be “grossly inadequate” regarding cleanliness, and that she observed litter and clutter *554 including dirty clothing, soiled diapers, rotting food, and evidence that the home was infested with rodents and insects. The social worker further testified that she noticed a gaseous odor she described as “stifling” which made it difficult to breathe. The children were placed in protective custody at that time.
As a result of improved conditions in the home, the children were returned to the custody of the parents in December 1989. The social worker further testified that in January 1991, the children were again placed in protective custody by DHR because the conditions in the home “were deplorable”, i.e., the only means of heat in the home was a toaster oven and a popcorn popper; litter and clutter existed as before; clothes were being dried over the toaster oven; the children had burn blisters on their hands; and the mother had failed to give the younger child prescribed medication for an ear infection.
The record reflects that DHR has continued to monitor and make recommendations to this family since March 1989. During that time, the family has lived in several dwellings, and the social worker has generally found each home in the same condition. The social worker testified that the parents had difficulty managing their money effectively and that untimely payment or nonpayment of bills, including rent and utilities, combined with unhealthy living conditions, had resulted in their eviction. She testified that while the children were in the custody of DHR, the mother and the father lived in various places, including an apartment provided by the Salvation Army, with friends, and in various shelters.
The social worker testified that she and the attorneys for the parties had observed the condition of the home the day of the hearing. She testified that the home was cluttered with items like dirty clothing and dirty dishes, that the home was filled with a strong, foul odor, that the floors and surfaces were extremely dirty, and that there was evidence of insect infestation. She testified that she observed a mousetrap on the floor containing what appeared to be the remains of a dead mouse. The social worker also testified that when the refrigerator door was opened, insects flew out, and that she observed rotting food items in the refrigerator, including cornish hens and fruit.
There was some evidence that the family’s living arrangements had stabilized because the parents had lived in the same home for over a year, and that the mother had been employed at the same job for approximately ten months. The father, however, was unemployed and had no income, and both parents suffered with numerous medical problems. The social worker testified that the one-bedroom apartment did not provide adequate space for the children, and that although the home was “tidier,” she still would not recommend placement of the children in this home. She testified that although the parents improved at times over the years, their improvement was never consistent or prolonged.
This court stated in In re Hickman, 489 So.2d 601, 602 (Ala.Civ.App.1986), that:
“Poverty ..., in the absence of abuse or lack of caring, should not be the criteria for taking away a wanted child from the parents. Such should particularly be the ease when there has been no apparent aid given toward keeping the family together by the agency seeking its termination.”
Although poverty may be a significant factor in this situation, it was not the basis of the judgment. The social worker testified that she had observed homes of poorer families that were cleaner. Furthermore, there is substantial evidence of efforts made by DHR to rehabilitate these parents and to reunite the parents with their children.
The instructor for the parenting class testified that although the parents attended and completed the class, it was her opinion that they were not prepared to provide the necessary support and security to their children. The social worker testified that workers from homemaker services attempted to teach the parents skills to maintain a clean and healthy home environment, to help with meal planning, to provide information on health and nutrition, and to teach budgeting skills. The service also provided the parents with mops, brooms, and other cleaning supplies, and it actually assisted the parents in cleaning the home. Ultimately, these services were terminated after almost two years because the parents were not progressing.
*555 The social worker also testified regarding numerous other referrals for the family, including referrals for psychological counseling, assistance in money management, obtaining food, vocational rehabilitation, public assistance benefits, public housing, and obtaining pest control. The record reveals, however, that the parents failed to take advantage of those opportunities. For example, the parents failed to attend many of the counseling sessions. Additionally, when exterminators attempted to spray the home, they were unable to complete the job because the home was so cluttered, and when they returned, the family had been evicted. The family was also approved for public housing, but the social worker testified that they refused this assistance because they did not want their children living in a public housing environment. The mother, however, testified that she was never told that they were approved for public housing, and the father testified that he did not recall being approved.
In eases such as this, where the child is not in the physical custody of the parents, Ala. Code 1975, § 26-18-7(b), provides that the court shall also consider, inter alia, the following: whether the parents have provided for the material needs of the child; whether the parents have maintained regular visitation or consistent contact with the child; and whether the parents have demonstrated efforts to adjust their circumstances to meet the needs of the child.
Testimony indicated that the parents maintained regular visits with the children, and that they brought snacks, toys, and clothing to these visits. There was also testimony that the parents love their children, that the children enjoyed visits with the parents, and that the children desired to return to their parents. Despite some efforts by the parents, the record is replete with evidence that efforts to rehabilitate the parents were unsuccessful. The record evidence discloses that the parents were simply unwilling or unable to adjust their circumstances to meet the needs of their children.
In Ex parte State Department of Human Resources, 624 So.2d 589, 592 (Ala.1993), our supreme court commented that “an indication of the parents’ willingness to care for the [children]” was not enough to “defeat an effort by DHR to satisfy the requirements of § 26-18-7.” Additionally, we note that, although the termination petition was based on neglect and on the unstable and unhealthy home environment, the record also contains some disputed evidence regarding possible abuse of the children and inappropriate discipline of the children by the mother.
In a nonjury trial, one primary function of a trial court is to determine the credibility and the weight of all of the evidence in its effort to ascertain the truth. Lee v. Jackson County Department of Pensions & Security, 470 So.2d 1294 (Ala.Civ.App.1985). Where evidence conflicts, matters of dependency and custody rest peculiarly within the discretion of the trial court. Lee, supra. Furthermore, the determination of a trial court based upon ore tenus proceedings will not be disturbed on appeal unless it is unsupported by the evidence, and is therefore plainly and palpably wrong. Lee, supra.
When the State seeks to terminate parental rights, the trial court must apply a two-pronged test. Ex parte Beasley, supra. First, the trial court must find that the child is dependent based on clear and convincing evidence. Ala.Code 1975, § 12-15-65(e). Then, it must find that there are no viable alternatives to the termination of parental rights. Ex parte Beasley, supra. The trial court found that the children were dependent, and the record contains clear and convincing evidence to support this finding.
The record also reveals that there was no alternative placement available. The paternal grandmother, with whom the children had briefly resided, was investigated as a possible alternative placement; however, she had relinquished custody, and she testified at trial that she was not able to care for the children because of her health and her inability to discipline the children. The social worker testified that she is not aware of any other relatives willing to accept custody of the children. Additionally, it is noteworthy that these children were ages four and five at the time of trial, and that they have been in foster homes for most of their lives. There was testimony that they are presently considered by DHR to be “very adoptable,” and *556 the current foster parents have expressed a desire to adopt both children. It is in the best interests of these children to allow them the opportunity for some stability and permanency in their lives. See supra.
After a thorough review of the voluminous record applying the attendant presumptions, we find that there was clear and convincing evidence to support the trial court’s decision to terminate the parental rights of the mother and the father. Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.