This case involves the termination of parental rights.
In April 1993, the Madison County Department of Human Resources (DHR) filed petitions alleging that A.L. and L.L. were dependent children and seeking to terminate the parental rights of L.S. (father) and G.L. (mother). The children had been declared dependent by an order in February 1992.
After ore tenus proceedings in June 1993, the trial court granted DHR's petitions, finding that the children had remained dependent since the initial finding of dependency, and it terminated the parental rights of both the mother and the father. The court further found that DHR had made reasonable efforts to prevent removal of the children from the parents. Only the mother appeals.
The issues on appeal are whether there was clear and convincing evidence to support the trial court's decision to terminate parental rights, and whether evidence introduced at trial regarding the mother's loss of custody of other children was so remote as not to be material and relevant in this action.
Initially, we note that the termination of one's parental rights is an extreme matter that is not considered lightly.Ex parte Beasley, 564 So.2d 950 (Ala. 1990). A parent's prima facie right to custody of his or her child can only be overcome by clear and convincing evidence that permanent removal from the parent's custody serves the best interests of the child.L.N. v. State Department of Human Resources, 619 So.2d 928
(Ala.Civ.App. 1993). In determining the child's best interests, the court must consider whether the parents are physically, financially, and mentally able to care for the child. J.L.B. v. State Department of Human Resources,608 So.2d 1367 (Ala.Civ.App. 1992).
Ala. Code 1975, § 26-18-7(a), provides that the trial court may terminate parental rights if it finds from clear and convincing evidence that the parent is unable or unwilling to discharge his or her responsibilities to and for the child. The court may consider several factors in determining whether a parent is unable to discharge responsibilities to and for the child, including "[e]motional illness, mental illness or mental deficiency of the parent . . . of such duration or nature as to render the parent unable to care for the needs of the child," Ala. Code 1975, § 26-18-7(a)(2); and "[t]hat reasonable efforts by [DHR] . . . leading toward the rehabilitation of the parents have failed." Ala. Code 1975, § 26-18-7(a)(6).
Additionally, in cases such as this, where the child is not in the physical custody of the parents, Ala. Code 1975, §26-18-7(b), provides that the court shall also consider, inter alia, whether the parents have provided for the material needs of the child or have paid reasonable support, where the parents are able to do so; whether the parents have maintained regular visitation and consistent contact with the child; and whether the parents have demonstrated efforts to adjust their circumstances to meet the needs of the child.
The record reveals that DHR filed petitions seeking temporary legal custody of the children as the result of reports that the children had been left unsupervised. Reportedly, A.L. had been observed playing in a road naked, and the children were going from house to house begging for food and saying that the mother would not feed them. There were also reports that men were frequently in and out of the motel room and other apartments where the mother and two children resided. A.L. was allegedly observed with blood running down her leg, and, according to a DHR worker, there was reason to suspect that she had been sexually abused. A court report also indicated that, at the time the children were removed from the mother's custody, the house in which they were living had no utilities, furnishings, or food. *Page 83 
In its February 1992 order finding the children to be dependent, the trial court ordered the mother to establish and maintain adequate housing and sufficient income to support the children, to obtain a psychological evaluation and to comply with any recommendations, to attend bi-weekly visitation with the children, and to attend classes for parenting skills. A DHR employee testified that for several months the mother and the children had been residing in an apartment, with inadequate space and without a proper environment for the children. The mother testified that she had recently moved into a different apartment which she described as an efficiency apartment. The mother testified that she was 32 years old, that she had dropped out of school in the 9th grade, that she has not been employed since dropping out of school, and that she is dependent on public assistance.
Psychological evaluations indicate that the mother is mildly mentally retarded, and "that she does not have the capacity to follow-through with . . . the proper care of [her] children." The record indicates that both children are also mildly mentally retarded. A DHR worker testified that L.L. "has been diagnosed as attention deficit with hyperactivity," requiring medication, and that L.L. "is quite a handful if he does not get his medication." She stated that when he was taken into custody, he would just sit and rock or bang his head on the floor or wall, but that he improved after being placed on medication and receiving therapy. She testified that the mother had failed to take the child to medical appointments regarding this problem. She also testified that initially both children had very bad dental problems, speech impediments, and "basically no social skills," but that they had improved after being taken into DHR's custody.
This court stated in In re Hickman, 489 So.2d 601, 602-603
(Ala.Civ.App. 1986), that:
 "[p]overty and limited mentality of a mother, in the absence of abuse or lack of caring, should not be the criteria for taking away a wanted child from the parents. Such should particularly be the case when there has been no apparent aid given toward keeping the family together by the agency seeking its termination."
Poverty and the limited mentality of the mother were obviously significant factors in the decision to remove these children from the mother's custody; however, the evidence indicates that the mother's limited mentality interfered with her ability to care for her children. Additionally, there is substantial evidence that DHR made efforts to rehabilitate the mother and to assist her in meeting the needs of her children. The record reveals that DHR has "been involved with this family basically since December of 1980," and that the mother has had three older children removed from her custody. Homemaker services provided to the mother for approximately 10 years were discontinued in 1991, as the result of the mother's lack of progress in learning to parent her children. The mother also failed to attend parenting classes and vocational rehabilitation. The mother told DHR workers that she did not have transportation to classes, but when transportation was provided, the mother was not at home.
Testimony also indicated that neither the mother nor the father provided any support for the children after they were placed in DHR custody. We note, however, that because of the mother's limited income, she probably did not have the ability to provide such support. Although DHR established bi-weekly visitation for the mother, a DHR worker testified that she visited only "sporadically" with her children. DHR apparently began transporting the mother to visitation when she failed to attend on her own. The mother testified that she sees the children "two times every two weeks." A primary function of a trial court in a nonjury trial is to determine the credibility and weight of the evidence in its effort to ascertain the truth. Lee v. Jackson County Department of Pensions Security,470 So.2d 1294 (Ala.Civ.App. 1985). Where evidence conflicts, matters of dependency and custody rest peculiarly within the discretion of the trial court. Lee, supra. Furthermore, the determination of a trial court based upon ore tenus evidence will not be disturbed on appeal unless it is unsupported by the evidence, *Page 84 
and is therefore plainly and palpably wrong. Lee, supra.
When the State seeks to terminate parental rights, the trial court must apply a two-pronged test. Beasley, supra. First, the court must find that the child is dependent based on clear and convincing evidence. Then, it must find that there are no viable alternatives to the termination of parental rights.Beasley, supra.
The trial court found that the children were dependent, and the record discloses clear and convincing evidence to support this finding. Furthermore, the record reveals that there was no alternative family placement available. The father of the children had previously been awarded custody of his and the mother's older child. He indicated to DHR employees that he did not believe that the mother was capable of caring for these children. He further indicated that he is unable to care for two additional children and that he desires that the children be placed for adoption. A DHR employee testified that DHR had inquired into the possibility of placing the children with members of the extended families of the mother or the father, but that she was unaware of any relative resources available for the children. The mother confirmed that she did not have any relatives to care for the children.
After thoroughly reviewing the record, applying the attendant presumptions, we find that there was clear and convincing evidence to support the trial court's decision to terminate the parental rights of G.L. to her children. The guardian ad litem stated to the trial court at the conclusion of the trial that "although it appears that the mother is genuine in her love and concern for her children, it appears . . . that her limitations are so severe that she would be unable to take care of these children." This result is extremely unfortunate; given the facts of this case, it appears that the trial court correctly found that termination of the mother's parental rights was in the best interests of these children.
The mother further contends that the trial court erred in admitting evidence regarding her loss of custody of other children. Specifically, she contends that evidence regarding events from 10 years earlier was so remote as not to be relevant or material. In a juvenile proceeding to determine custody of a child, the trial court has wide latitude to decide which evidence it will consider, and the weight to be afforded the evidence is a matter of judicial discretion. In re Shivers,440 So.2d 1081 (Ala.Civ.App. 1983). The child's best interests control in such a case, and in determining those best interests, the trial court may consider the conduct and activities of a parent. Shivers, supra. The trial court may consider evidence of past family history, as well as evidence of present circumstances, in determining whether parental rights should be terminated. Franklin v. State Department ofHuman Resources, 513 So.2d 625 (Ala.Civ.App. 1987). It was not error for the trial court to consider the mother's previous loss of custody of other children. Shivers, supra. Such evidence may be properly admitted to show the mother's general inability to care for her children and her lack of ability to progress in learning parenting skills.
Based upon the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.