CRAWLEY, Judge.
In October 1998, the Cullman County Department of Human Resources (“DHR”) filed a petition to terminate the parental rights of R.J. and R.J. (the parents) as to their child Q.J. Following the presentation of ore tenus evidence, the trial court terminated their parental rights. Both parents appeal.
The termination of parental rights is a drastic measure, and the courts gravely consider such action. Ex parte Beasley, 564 So.2d 950 (Ala.1990). A natu *798 ral parent’s prima facie right to the custody of his or her child is outweighed only by clear-and-convincing evidence indicating that termination of parental rights is in the best interests of the child. L.N. v. State Dep’t of Human Resources, 619 So.2d 928 (Ala.Civ.App.1993). The trial court considers a parent’s physical, financial, and mental abilities to care for the child, to determine the child’s best interests. J.L.B. v. State Dep’t of Human Resources, 608 So.2d 1367, 1368 (Ala.Civ.App.1992).
The grounds upon which a court may terminate parental rights are set out in Ala.Code 1975, § 26-18-7(a):
“[T]he parents of the child are unable or unwilling to discharge their responsibilities to and for the child, or ... the conduct or condition of the parents is such as to render them unable to properly care for the child and ... such conduct or condition is unlikely to change in the foreseeable future.... ”
The trial court is required to apply a two-pronged test in determining whether to terminate parental rights: (1) whether their is clear-and-convincing evidence indicating that the child is dependent; and (2) whether there are any viable alternatives to a termination of parental rights. Beasley at 954. The parents do not argue that there are viable alternatives to termination of their parental rights. They argue that there is not clear-and-convincing evidence that the child is dependent, and not clear- and-convincing evidence that termination of their parental rights is in the best interests of the child.
Shortly after the child was born, in 1991, DHR became involved with the family. The immediate concerns at that time were the unsanitary condition of the family’s home and the effect the uncleanliness had on the child’s chronic anemia, a congenital condition. DHR offered homemaking services, parenting classes, counseling, day care, and financial assistance during the father’s periodic unemployment. The parents have an older daughter who is in the custody of the paternal grandparents. The parents have not sought to regain custody of the daughter. The grandparents have declined the responsibility to become custodians of the younger child.
The child was removed from the parents’ home in 1995, after the mother had alleged that the father was physically abusing her and had thrown a metal wrench toward the child. DHR assisted the mother and the child in obtaining emergency shelter at a domestic-violence center, and it then assisted the mother in obtaining an apartment. The mother began to allow the father access to the child; this violated a court order, and the child was placed in a foster home, where he now resides.
Both parents have been repeatedly counseled that the child’s chronic anemia is aggravated by eating unsafe food and living in unsanitary conditions. However, the evidence indicates that the parents continued to neglect basic house cleaning, such as washing dishes, disposing of unused or spoiled food, and leaving meat unrefrigerated and offering it to the child when it was unsafe to eat. The child also has behavior disorders, and the evidence indicates that the parents would actually encourage the child to communicate in animal grunts and sounds rather than to talk and would encourage the child to defecate and urinate in his pants when he was six years old.
During the three years the child had lived in foster care before the termination proceedings began, the parents did not make much effort to improve their lives. The evidence indicates that the sanitation condition in their home has not improved much and that they have missed counsel *799 ing sessions and sessions to discuss DHR’s Individualized Service Plan (“ISP”) for them, which were designed to educate and inform the parents on how to regain custody of the child. The evidence indicates that the child has made much improvement in foster care and that when the child had long-term visitation with the parents his emotional state quickly deteriorated. The court eventually ordered that the visitation cease.
We conclude that the trial court’s judgment terminating parental rights is supported by clear-and-convincing evidence. Over a seven-year period, DHR has provided a variety of assistance and encouragement intended to allow the parents to improve their ability to rear the child, and to allow them, once they had lost custody of the child, to regain custody. The parents have simply failed to make efforts to improve their lives to the point of being able to provide a minimally suitable home environment for the child.
The judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.