These appeals involve a custody determination made in proceedings that originated from a petition to terminate the parental rights of the mother, S.P., as to three of her children, T.M., D.P., and M.S.; and a dependency petition as to her youngest child, M.P.[1] In December 1996, the *Page 1108 
Calhoun County Department of Human Resources ("DHR") petitioned for immediate custody of the children, alleging that the mother had abused and neglected the children and that another of the mother's children had been "killed as a result of child abuse by the mother's live-in boyfriend." The court found that the children were dependent and in need of protective care of the State.The three older children have remained in DHR's custody since December 1996; the youngest child, born on April 14, 1998, has remained with the mother since the child's birth.
Following ore tenus proceedings, the court, on March 11, 1999, entered a dispositional review order, finding that DHR had not made reasonable efforts toward reunification before it filed for a termination of parental rights. The court ordered that the children be returned to the mother through a "phase-in within one month and to be completed within six months unless stayed by the court." The court also dismissed the dependency petition involving M.P. DHR filed a postjudgment motion arguing that it was not in the best interests of the children to be returned to the mother; the court denied the motion on April 5, 1999. DHR appeals, arguing that the trial court abused its discretion when it ordered DHR to return physical custody of the three children to the mother.
On February 11, 1999, and on March 11, 1999, the court heard extensive testimony as to the mother's participation in counseling and drug/alcohol-treatment programs, as specified in her individual servicing plan ("ISP"). The mother had been referred to individual and family counseling because she had been sexually abused as a child; she had a pattern of entering into abusive relationships with men; and she had failed to protect her children from these men. There was testimony indicating that the mother had made progress in understanding healthy versus unhealthy relationships and how her own sexual abuse had contributed to her entering into destructive relationships. Gayle Wood, the mother's counselor, testified that the mother appeared to be making progress in her counseling sessions; Wood, in her May 1998 report, recommended that the mother be given unsupervised visitation and increased contact with the children. David Wilson, a licensed psychologist, interviewed the mother in June 1998 and recommended that DHR provide monitoring and parenting skills to determine if the mother could adequately parent her children.
The mother had tested positive for marijuana in September 1997; she was referred to the Calhoun Behavioral Program, and she completed the outpatient drug-and alcohol-treatment program. M.W., the father of D.P., testified that the mother had drunk alcohol with him and his family during the past year; however, he said, the mother had never been abusive toward any of her children. No evidence was presented to indicate that the mother had a current substance-abuse problem.
Ella Walker, the foster parent caring for the mother's three children, had agreed to serve as a mentor to the mother and to assist her in developing appropriate parenting skills. Ms. Walker testified that she had allowed numerous unsupervised visits by the mother with the children, beginning in the spring of 1997. During the past two years, the mother had had at least 50 unsupervised visits with the children. DHR had become aware of the unsupervised visits following an incident in which the mother's two-year-old was accidentally burned when one of the other children turned over a cooking pot and the contents spilled on the child.
Katrina Heath, a DHR social worker assigned to the mother, stated that she had met with the mother on a weekly basis during a four-month period following the *Page 1109 
birth of M.P., to provide parenting skills. According to Ms. Heath, the mother displayed a "loving and caring attitude toward her daughter" and maintained a clean and appropriate home. Cynthia Perry, the caseworker assigned to the mother since February 1997, stated that DHR had moved forward with termination and dependency petitions because the mother failed to meet her ISP goals; however, when questioned by the court as to which specific goals the mother had failed to meet, Ms. Perry responded by listing goals that were not written in the mother's ISP. The mother's case file indicated that the mother was making progress toward reunification; that the mother had completed all of the requirements stipulated by DHR; and that, as of March 1998, DHR had intended to return the children to the mother. The court noted that there was no evidence to explain what had occurred between March 1998 and October 1998, when the termination and dependency petitions were filed. Jerry Glover, the DHR supervisor assigned to the mother's case for the past three years, testified that the mother had expressed love and concern for her children; however, he said, DHR continued to have concerns regarding safety, domestic violence, and self-sufficiency issues. When questioned as to the mother's progress, Mr. Glover stated that the mother had made no progress, but he could not identify which of the ISP goals she had failed to complete.
At the end of the proceedings, DHR moved to dismiss its termination petitions. The court granted the dismissal, finding that DHR had failed to meets its burden of proof, and it ordered that the three children be returned to the mother within a one-month to six-month period. We note that the trial court granted a hearing on DHR's postjudgment motion regarding the court's decision to return custody to the mother. At the hearing, the trial court reiterated its conclusion that DHR had failed to prove its case and that there was no evidence to support a determination that the mother should not be awarded custody of her children.
Matters of dependency and child custody are within the discretion of the trial court. Where ore tenus evidence is presented, the judgment of the trial court is presumed correct and will be reversed only upon a showing that it was plainly and palpably wrong. R.G. v. Calhoun County Dep't of Human Resources,716 So.2d 219 (Ala.Civ.App. 1998) (citing G.C. v. G.D.,712 So.2d 1091 (Ala.Civ.App. 1997)). A judgment of dependency and the subsequent transfer of custody are provided for in § 12-15-71, Ala. Code 1975, and are governed by the best interests of the child. Jones v. Webb, 524 So.2d 374 (Ala.Civ.App. 1988). InG.C., supra, at 1093, this court stated: "Initially, we note that a primary goal of the Alabama Juvenile Justice Act is `[t]o reunite a child with his parents as quickly and safely as possible when the child has been removed from his parents' custody.' Ala. Code 1975, § 12-15-1.1." After considering the totality of the circumstances presented in this case, we conclude that the trial court's decision to return the children to the mother is supported by clear and convincing evidence and that that decision is in the best interests of the children.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
Robertson, P.J., and Monroe and Crawley, JJ., concur.
Thompson, J., concurs in the result.
[1] The petitions to terminate the mother's parental rights are not contained in the record; however, the JU case numbers were recorded and noted by the trial court. The dependency petition for M.P. was filed on October 7, 1998. *Page 1110