I dissent.
DHR described the factual background of the case currently before this court as one in which the mother had cognitive deficits and was unable to properly care for her children without full-time assistance, had no family to assist her, and was neither mentally nor financially able to provide for her children. Based upon those facts, DHR contends that the juvenile court's determination was correct and in the best interest of the children. DHR did not plead its financial inability to provide the mother with full-time assistance.
DHR's local staff is to be commended for its success in rehabilitating the mother to her maximum functioning ability. It is *Page 967 
the best professional effort I have reviewed.
Ala. Code 1975, § 26-18-7(a)(6), requires that before parental rights are terminated a trial court must consider whether "reasonable efforts by the Department of Human Resources . . . leading toward the rehabilitation of the parents have failed."
Rather than affirm the permanent separation of this mother and these children, we should interpret the phrase "reasonable efforts" by DHR to include providing part- or full-time assistance to a parent in need due to marginal mental functioning.
 "The term `reasonable,' however, constitutes more than mere availability of services, and states should not define `reasonable efforts' merely as a provision of available services. Such a definition would shift the emphasis away from the congressional goal of family preservation and permanency planning. If agencies were to expend all `available' services related to the needs of families, then courts would review only whether a state fully utilized its resources. Thus, the agency's diligence in providing services to the families would determine whether the agency acted `reasonably.' The emphasis would shift from family preservation to the technical application of the reasonable efforts requirement. This approach is contrary to congressional intent; Congress designed the Adoption Assistance and Child Welfare Act of 1980 to encourage states to reform their social problems, not to merely maintain the status quo."
Jessica A. Graf, Note, Can Courts and Welfare Agencies Save theFamily? An Examination of Permanency Planning, FamilyPreservation, and the Reasonable Efforts Requirement, 30 Suffolk U.L.Rev. 81, 109-10 (1996) (footnotes omitted).
Federal and state statutory and regulatory authority supports this interpretation.
Ala. Code 1975, § 12-15-1.1, states:
 "This chapter shall be known as the Alabama Juvenile Justice Act. The purpose of this chapter is to facilitate the care [and] protection . . . of children who come within the jurisdiction of the juvenile court. . . .
 "In furtherance of this purpose, the following goals have been established for the juvenile court:
 "(1) To preserve and strengthen the child's family whenever possible, including improvement of home environment.
". . . .
 "(3) To reunite a child with his or her parents as quickly and as safely as possible when the child has been removed from the custody of his or her parents.
". . . .
 "(5) To promote a continuum of services for children and their families from prevention to aftercare, considering wherever possible, prevention, diversion, and early intervention.
". . . .
 "(8) To achieve the foregoing goals in the least restrictive setting necessary, with a preference at all times for the preservation of the family and the integration of parental accountability and participation in treatment and counseling programs.
 "Judicial procedures through which these goals are accomplished will assure the parties a fair hearing where their constitutional and other statutory rights are recognized and enforced.
 "This chapter shall be liberally construed to the end that each child coming within the jurisdiction of the juvenile court shall receive the care, guidance, and control, preferably in his or her own home, necessary for the welfare of the child and the best interest of the state." *Page 968 
In G.C. v. G.D., 712 So.2d 1091 (Ala.Civ.App. 1997), this court interpreted this statute and stated:
 "Initially, we note that a primary goal of the Alabama Juvenile Justice Act is `[t]o reunite a child with his parents as quickly and safely as possible when the child has been removed from his parents' custody.' Ala. Code 1975, § 12-15-1.1."
G.C., 712 So.2d at 1093. Since G.C. was decided, this court has consistently applied this interpretation. See Calhoun CountyDep't of Human Res. v. S.P., 758 So.2d 1107 (Ala.Civ.App. 1999), and Ex parte W.T.M., 851 So.2d 55 (Ala.Civ.App. 2002). Seealso Glover v. Alabama Dep't of Pensions Sec., 401 So.2d 786,789 (Ala.Civ.App. 1981) ("termination of parental rights by the State should occur only upon strong proof of abuse and/or continuing neglect of the welfare of the child"); and Hickman v.State Dep't of Pensions Sec., 489 So.2d 601, 602-03
(Ala.Civ.App. 1986) ("Poverty and limited mentality of a mother, in the absence of abuse or lack of caring, should not be the criteria for taking away a wanted child from the parents.").
In 42 U.S.C. § 671(a)(15)(B), a part of Subchapter IV-E of the Social Security Act,[2] the United States Congress provided that "reasonable efforts shall be made to preserve and reunify families" so as "to make it possible for a child to safely return to the child's home." Pursuant to 45 C.F.R. § 1355.25, part of a federal regulatory scheme "contain[ing] general requirements for Federal financial participation under titles IV-B and IV-E of the Social Security Act" (45 C.F.R. § 1355.10), the following principles
 "should guide the States . . . in developing, operating, and improving the continuum of child and family services.
 "(a) The safety and well-being of children and of all family members is paramount. When safety can be assured, strengthening and preserving families is seen as the best way to promote the healthy development of children. . . .
 "(b) Services are focused on the family as a whole; service providers work with families as partners in identifying and meeting individual and family needs; family strengths are identified, enhanced, respected, and mobilized to help families solve the problems which compromise their functioning and well-being."
I think this court should reverse the trial court's judgments and remand the cause to the juvenile court to determine whether part- or full-time[3] assistance by DHR would allow this mother and these children to live together safely.
 "The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children `comes[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' Kovacs v. Cooper, 336 U.S. 77, 95[, 69 S.Ct. 448, 93 L.Ed. 513] (1949) (Frankfurter, J., concurring)." *Page 969 
Stanley v. State, 405 U.S. 645, 651, 92 S.Ct. 1208,31 L.Ed.2d 551 (1972).
The "powerful countervailing interest" in this case is the protection of the children. Part- or full-time assistance provided by DHR to the mother could eliminate this concern.
[2] Subsection IV-E of the Social Security Act is entitled "Federal Payments for Foster Care and Adoption Assistance." Section 671 sets out the requirements for state plans for foster care and adoption assistance in order for a state to receive funding under the Act.
[3] The mother knows how to telephone designated agencies for help. Assistance might not be needed while the children are in day care and, later, school.